318 A.2d 455.

STATE *vs.* OSCAR E. TURLEY, JR.

APRIL 24, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. On September 20, 1971, the defendant was arrested under a complaint and warrant charging that on September 19, 1971, he feloniously and with malice afore-thought murdered one Roger Nunes. He was brought before the District Court, Sixth Division, and pleaded not guilty to the charge of murder. He was ordered held without bail and the case was continued four weeks for the filing of special pleas. The District Court assigned counsel to repre-sent the defendant.

On November 30, 1971, an indictment charging defendant with murder was returned in the Superior Court. No pre-liminary hearing had been held in the District Court. On the same day defendant was brought before the Superior Court and his case was referred to the Public Defender. The latter designated one of his assistants as counsel for defendant. The defendant then was arraigned, pleaded not guilty, and was given three weeks to file special pleas. The record shows that his counsel filed numerous motions on behalf of defendant, including motions for speedy trial, for production of tangible evidence, for bill of particulars, etc. Some of these were granted, some denied, and others with-drawn.

On March 20, 1972, the trial on the merits began before a justice of the Superior Court and a jury. The jury found defendant guilty of murder in the second degree. After the denial of his motion for a new trial, defendant filed "Rea-

sons of Appeal" consisting of 26 exceptions.[1] However, the only exception briefed and argued is to the denial of his motion for a new trial. Under our rule the others are deemed to be waived.

The relevant facts in this case are not complicated. On the evening of September 18, 1971, defendant moved to a building in Providence to share an apartment with Roger Nunes, a long-time friend. In the early morning hours of September 19, 1971, the Providence Rescue Squad responded to a report of a stabbing in the apartment occupied by defendant and Nunes. When they arrived they found Nunes gasping in his apartment. They transported him to Rhode Island Hospital where he was pronounced dead. He had died from a fatal wound inflicted by a carving fork. The defendant was apprehended outside of the apartment and later charged for the unlawful killing of Nunes.

The state presented the testimony of several witnesses who testified about the circumstances surrounding the incident which resulted in the death of Nunes and the arrest of defendant. Arlene E. Brown, who was acquainted with both Nunes and defendant, testified in substance as follows. At about 9:30-9:45 she had been asked by one of them to share their dinner. She did not share their dinner, but she did have a few drinks with them. She was going back and forth between a friend's apartment and the one belonging

---

[1] The trial of this case commenced prior to the effective date of P. L. 1972, ch. 169, secs. 10 and 11, which substituted an appeal for a bill of exceptions as the vehicle for obtaining a review in this court of a Superior Court judgment or order in a criminal proceeding. Accord, Rule 4(b) of the rules of this court. The commencement of the trial also occurred prior to September 1, 1972, the effective date of the new "Rules of Criminal Procedure of the Rhode Island Superior Court" which made it unnecessary to note formal exceptions to adverse rulings. See Rule 51. In the case at bar the claim for appellate review was filed on October 25, 1972. This is apparently the reason for entitling the exceptions "Reasons of Appeal." For convenience we shall treat this proceeding as an appeal under the new rules.

to Nunes and defendant. She was asked if she wished to play cards and returned to the friend's apartment to get some pennies. When she returned, Nunes and defendant were arguing about five-dollar bills. Nunes had some five-dollar bills in his hand which defendant said Nunes had stolen from him. When they started to argue she left.

She returned when she heard a loud noise and saw defendant on top of Nunes and both men clutching each other. She left again to try to get help but was unsuccessful. She returned to her friend's apartment and when she heard defendant say, "I'm going to kill you, you son-of-a-bitch," she went back to their apartment. Nunes and defendant were still on the floor and defendant had a fork in his hands. She again left to try to find help, but without success. When she returned this time, defendant was sitting on the stairs and said "Arlene, I think I've killed him." In his hands he had the "cat and a fork." The fork was a carving fork that looked like State's Exhibit 13. She left again and this time succeeded in getting the assistance of a Kenneth Bergin. As to drinking by Nunes and defendant, she said, "They had been drinking. Heavily, I can't say. They were drinking. They had been drinking. I am not a judge." She also said that there was "swearing back and forth" and that their speech was not slurred but they were very angry.

Kenneth Bergin testified that he took the fork from defendant's hand, but when he realized that it might be a murder weapon he threw it on the floor in the hallway. He told a friend who had accompanied him to call the rescue squad. He went back downstairs and had a couple of words with defendant, who jumped up and wanted to fight with him. Nunes was still alive.

Wayne P. Gill, a Providence police officer, testified that he was sent to answer a report concerning a stabbing; that when he got to the scene, he asked what happened; that

defendant stepped forward and said "I did it. I stabbed him"; that defendant walked up the stairs on his own; and that he, Officer Gill, could understand what defendant said.

The defendant testified in his own defense. His defense was amnesia from drinking. He testified that he could not remember anything that happened between him and Nunes on the night of the argument, but he did remember accusing Nunes of playing cards with defendant's money.

Doctor Bruno Franek, a neuropsychiatrist, was called as a witness by defendant. He testified that on the evening of September 21, 1971, at the request of defendant's then assigned counsel, he made a physical examination of defendant at the Adult Correctional Institutions. In his testimony he described certain physical injuries which he saw on various parts of defendant's body and which, he said, were of very recent origin. He also said that defendant showed "an organic bilateral tremor" and he was questioned about the condition known as "temporary amnesia" and the effect of the consumption of liquor on such a condition.

We believe that the factual background set forth above is sufficient to convey an understanding of the issues raised in this proceeding. Two briefs have been filed on behalf of defendant, one prepared by the Public Defender's Department and the other by defendant pro se.

We address ourselves first to defendant's pro se brief. One of his claims is that he received ineffective representation by the assistant public defender who represented him at the trial in the Superior Court. The transcript shows that after the jury returned its verdict but before the trial justice denied the motion for a new trial which assigned counsel had filed, defendant wrote a letter to the trial justice charging that he had received ineffective representation by his assigned counsel and requesting a new trial on the ground that he had been denied his federal and state consti-

tutional right to effective assistance of counsel.[2] The trial justice found no merit in defendant's claim and, in fact, said that defendant's assigned counsel had done an outstanding job. The defendant again raises this question in his pro se brief. However, although he makes charges of ineffectiveness, there is nothing in this record to support his claims. In the circumstances, even if we assume that this question is properly before us, we are unable to pass on the merits of his claim in the absence of supporting evidence.

The question of whether defense counsel has failed to fulfill his duty to render "reasonably effective assistance," *People* v. *White*, Colo., 514 P.2d 69, 71 (1973), is a question of fact which must be established by legally competent evidence. Mere unfounded claims and unsupported charges of ineffectiveness are of no avail.

It seems to us that the most expeditious way to advance a claim of ineffectiveness of counsel, after trial, is by an evidentiary hearing pursuant to a petition for habeas corpus in the Superior Court. In this manner an aggrieved defendant may present evidence to support his claim and prepare a record for review in the event of an adverse decision.

The next claim made by defendant in his pro se brief is that he was entitled to a preliminary hearing in the District Court and that his indictment by the grand jury while his case was pending in that court deprived him of his constitutional rights. This question was not raised in the Superior Court and therefore is not properly before us now, *State* v. *Quattrocchi*, 103 R. I. 115, 235 A.2d 99 (1967). Since we are satisfied that the absence of a preliminary hearing in the District Court did not prejudice defendant in any manner, we do not believe that strict compliance

---

[2]The defendant presented no evidence to support his charges; nor is the letter which he sent to the trial justice in the record transmitted to this court.

with procedural requirements should be relaxed or excused in this instance. *See State* v. *Quattrocchi, supra,* note 1.

We have examined the other contentions made by defendant in his pro se brief and find that they are without merit.

We come now to defendant's exception to the denial of his motion for a new trial as briefed and argued by his assigned counsel. He based this motion on the grounds that the verdict is against the law, the evidence and the weight thereof. Generally he argues that there is no evidence to support the verdict, that the trial justice failed to exercise his independent judgment in passing on credibility and the weight of the evidence, and that he overlooked material evidence on controlling issues. Specifically he contends that the trial justice overlooked "abundant, uncontroverted evidence concerning appellant's voluntary intoxication which negated the type of intent required of the jury's second degree murder verdict"; that he also overlooked "overwhelming evidence of sufficient provocation which further negated the essential intent required of the jury's verdict"; and that the trial justice's decision in no way shows that in the exercise of his independent judgment he weighed all the material evidence on the controlling issue of intent. More specifically he claims that with respect to the state's chief witness, Arlene E. Brown, the trial justice in his decision failed to give us the benefit of saying whether he believed or disbelieved her testimony; that likewise he failed to give his impression of defendant's credibility based on his independent analysis of defendant's testimony and demeanor while testifying; and finally that his comments about his personal acquaintance with Dr. Franek did not constitute passing on the doctor's credibility. Further he specifically argues that the second degree murder verdict is not supported by the evidence; that there is a lack of evidence to prove defendant formed a conscious design or

intent to kill; that there is overwhelming evidence that proves defendant and Nunes were engaged "in mutual combat because of a quarrel and the blows were mutually provoking"; and that there is overwhelming evidence proving that defendant had been drinking voluntarily to a degree to render him incapable of consciously intending to kill. In brief, defendant argues that the trial justice has not performed his duty in passing on the motion for a new trial and therefore that we should apply the appellate rule, disregard the trial justice's decision, and examine the record ourselves to determine whether there is competent evidence which, if believed, would support the jury's verdict. *See* *State* v. *Contreras,* 105 R. I. 523, 531-32, 253 A.2d 612, 617 (1969); *State* v. *Card,* 105 R. I. 753, 757-58, 255 A.2d 727, 730-31 (1969).

Because of the nature and seriousness of the offense of which defendant stands convicted we have discussed in great detail the various contentions made by defendant in the brief prepared and filed by his assigned counsel. After considering each of the specific contentions made by defendant in the context of the trial justice's charge to the jury and his decision denying the motion for a new trial, we come to the conclusion that defendant has failed to establish any of the grounds on which he relies in his motion, especially the ground that the verdict is against the evidence.

We consider here defendant's argument that the verdict is against the law. This argument certainly is without merit. The trial justice instructed the jury, in light of the evidence before him, on murder in the first degree, murder in the second degree, and manslaughter. The defendant took no exception to the charge as given. The instructions given the jury became the law of the case, *State* v. *Card,* *supra.* It was the trial justice's duty in exercising his independent judgment in passing on the motion for a new trial

to apply the law that he gave to the jury to the evidence as he viewed it. *Lee* v. *Kindelan,* 80 R. I. 212, 95 A.2d 51, *cert. denied,* 345 U. S. 1000, 73 S.Ct. 1146, 97 L.Ed. 1406 (1953). The defendant has failed to establish that the jury, in reaching its verdict, did not follow the law given by the trial justice, or that the latter, in passing on the motion for a new trial, failed to apply the law he gave to the jury.

The defendant next contends that the trial justice overlooked material, uncontroverted evidence concerning defendant's voluntary intoxication which negated the type of intent required for the jury's second degree murder verdict. We do not agree. Although voluntary intoxication does not automatically excuse the commission of an offense, when a specific intent is charged which aggravates the crime, and is an essential element of the crime, drunkenness may be offered to negate the specific intent charged. *State* v. *Murphy,* 107 R. I. 737, 271 A.2d 310 (1970). However, the intoxication which is required to negate the specific intent charged must be "* * * of such a degree as to completely paralyze the will of the respondent, take from him the power to withstand evil impulses and render his mind incapable of forming any sane design." *State* v. *Vanasse,* 42 R. I. 278, 281, 107 A. 85, 86 (1919). *See also State* v. *Reposa,* 99 R. I. 147, 206 A.2d 213 (1965).

There is no evidence in this record showing that the extent of defendant's intoxication was such as to negate the intent required. Nor did the trial justice overlook the evidence of defendant's drinking. His consideration of this factor is shown by his decision, in which he said:

"The defense was amnesia from drinking and the defendant's testimony was before the jury. He put his credibility on the line when he gave his version or his non-version, because he said he didn't remember anything. Doctor Franek gave some testimony which tended to help the defendant, but certainly wasn't enough to carry the day for him * * *."

The transcript also shows that the trial justice instructed the jury on intoxication as a defense.

A discussion of all the specific contentions made by defendant would unduly prolong this opinion. It suffices to repeat what we have already said above, that defendant has failed to establish that the trial justice overlooked or misconceived any material evidence on any controlling issue in exercising his independent judgment on the weight of the evidence and the credibility of the witnesses, especially Arlene E. Brown and defendant. It is clear from a reading of his decision that he accepted Arlene E. Brown's testimony and concluded that defendant could not help himself because he had no memory of what happened. This conclusion is evident from his remarks occasioned by defendant's letter to him, where the trial justice said:

> "The defendant has no memory. Couldn't help counsel; couldn't give him a quarter of an inch worth of help; no memory; and the third person who was there * * * carried the day for the State * * *. The jury accepted her testimony and so do I."

In conclusion, it is clear that the jury obviously accepted Arlene E. Brown's testimony and that the trial justice approved. His approval will not be disturbed by this court unless it is shown either that it is clearly wrong or that the trial justice in reviewing the evidence overlooked or misconceived material evidence on a controlling issue. The defendant failed to show either and, therefore, we find no error in the denial of his motion for a new trial.

The defendant's appeal is denied and dismissed.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Emanuel J. Lauria,* Asst. Public Defender, *John P. Toscano, Jr.,* Asst. Public Defender, *Oscar E. Turley, Jr., pro se,* for defendant.