Gerlardo **MASTRACCHIO**

v.

**Robert HOULE, Assistant Director
of Adult Services.**

**No. 79–438–C.A.**

Supreme Court of Rhode Island.

June 24, 1980.

Dale Anderson, Asst. Public Defender, Guy J. Wells, Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., Thomas H. Caruolo, Sp. Asst. Atty. Gen., for respondent.

## OPINION

WEISBERGER, Justice.

These appeals come before us in connection with an application by Gerlardo Mast-

racchio (applicant) for postconviction relief pursuant to the provisions of chapter 9.1 of title 10, G.L. 1956 (1969 Reenactment), as enacted by P.L.1974, ch. 220, § 3. This statute now provides the exclusive remedy to be utilized for appropriate collateral attack upon a criminal conviction on any ground of alleged error heretofore available under common-law or statutory postconviction remedies. Section 10–9.1–1(b). It is not designed as a substitute for direct review of the conviction or sentence. *Id.*[1]

The application sets forth in seventeen counts a number of claims for relief, and these claims are supplemented by an amended application and affidavit executed by applicant.[2] A justice of the Superior Court denied applicant's motion for a new trial and all requests for relief set forth in the application save the request to vacate applicant's conviction of the crime of robbery. This request was based upon the alleged impropriety under double-jeopardy principles of charging and convicting applicant of both the crime of felony murder and the underlying felony of robbery, which was an element of the greater charge. The Superior Court justice vacated the robbery conviction and dismissed the indictment upon which it was based. The applicant and the state both appealed. Because one ground of applicant's appeal is of central constitutional importance and dispositive of the issue of his entitlement to a new trial, we shall limit this opinion to a consideration of that issue and of the prosecution's cross-appeal.

 Count I of the application sets forth as a basis for relief that applicant was forbidden by the trial justice to talk with his counsel concerning any matter relating to the case during a weekend recess in the trial. The application goes on to assert that this ruling of the trial court denied applicant his right to the assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution and by art. I, sec. 10 of the Constitution of Rhode Island. The transcript unquestionably discloses that during the course of the trial, on the Friday preceding the Monday upon which the trial ended, applicant was under cross-examination. At the adjournment of court on that date, the trial justice admonished applicant not to discuss the case with his attorney during the weekend recess. This ruling was made in the course of the following colloquy:

"MR. O'NEILL: If the Court please, I'd like to make a * * * motion, that I be allowed * * * to talk to the Defendant not about any of his testimony. However, anything else which I don't anticipate anything now, but which may become relevant over the weekend.

"MR. DIMITRI: I would object to that, Your Honor. I was going to ask the Court to admonish this Defendant not to speak with his counsel over the weekend. It's very, very important that it's not done.

"THE COURT: The ruling of the Court is that this Defendant will not talk to his counsel concerning any matter relating to this case.

"MR. DIMITRI: Thank you, Your Honor.

"THE COURT: His testimony or anything else relating to this case. If you want time to talk to your Defendant, Mr.

---

1. In 1970 the applicant was convicted of murder in the first degree and robbery pursuant to two separate indictments. He had been accused by state witnesses of participation and aiding and abetting in the robbery of an employee of the Brink's armored-truck service during the course of a cash delivery to the Harris Avenue plant of H. P. Hood & Sons on Thursday, April 10, 1969. During the course of the robbery the Brink's employee, John Glendinning, was shot and killed by Nicholas Palmigiano, a codefendant who was tried together with the applicant in the Superior Court.

2. The appendix to applicant's brief includes the amended application and affidavit, although these documents are not included in the case file. Since the state and the applicant have stipulated that the amended application and affidavit were in fact filed by leave of court and since they request that these documents be included in the record, we will consider them as part of the record.

Mastracchio, after his cross-examination is complete, I'll give you that time.

"MR. O'NEILL: Exception.

"THE COURT: If it relates to the case, that is.

"We'll resume Monday morning at 10 o'clock."

The trial was resumed on the following Monday. On that date both the state and applicant terminated their presentation of evidence and rested; on the following date they delivered arguments and the case was submitted to the jury. The applicant was found guilty of murder in the first degree and robbery. A life sentence was imposed on September 14, 1970, on the murder indictment, and sentence was deferred on the robbery charge. An appeal was taken and duly considered by this court in *State v. Mastracchio*, 112 R.I. 487, 312 A.2d 190 (1973), and resulted in the overruling of the exceptions then asserted on behalf of applicant. It is significant to note that although at trial an exception had been preserved in respect to the prohibition of consultation with counsel over the weekend recess, this exception was neither briefed nor argued on direct review.

Although the issue of the propriety of forbidding a defendant in a criminal case to talk with his lawyer during a recess while the defendant is under cross-examination or is between direct examination and cross-examination had been considered by various federal and state courts prior to the time of this trial,[3] the Supreme Court of the United States did not address this question until *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In that case the Court was confronted with a situation in which a defendant in a federal prosecution was ordered not to consult with his attorney during a regular overnight recess called while the defendant was on the stand as a witness and shortly before cross-examination was to begin. A challenge raising the constitutional infirmity of this order as a denial of the Sixth Amendment right to

counsel had been rejected by the court of appeals in *United States v. Fink*, 502 F.2d 1 (5th Cir. 1974), *rev'd sub nom. Geders v. United States, supra,* on the ground that the defendant's failure to claim any prejudice resulting from his inability to consult with counsel during one evening of the trial was fatal to his appeal. In this holding the Court of Appeals for the Fifth Circuit had relied on *United States v. Leighton*, 386 F.2d 822 (2d Cir. 1967), *cert. denied,* 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968), a case that dealt with a similar order applied to a luncheon recess. The Court of Appeals for the Fifth Circuit had rejected as unpersuasive a holding by the Court of Appeals for the Third Circuit that in an overnight-recess situation prejudice need not be shown. *See United States v. Venuto*, 182 F.2d 519 (3d Cir. 1950).

Chief Justice Burger, writing for the Court in *Geders*, recognized the power of a trial judge to sequester witnesses before, during, and after their testimony. However, in balancing the right of the trial judge to deal with perils arising out of possible improper attempts to influence or coach a witness against the right of a defendant (as distinguished from a nonparty witness) to have the aid of counsel during a recess of significant duration, the Court squarely held that "the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Geders v. United States*, 425 U.S. at 91, 96 S.Ct. at 1337, 47 L.Ed.2d at 601. The Court went on to hold that an order preventing a criminal defendant from consulting his counsel during a seventeen-hour overnight recess between his direct examination and cross-examination impinged upon his Sixth Amendment right to the assistance of counsel. *Id.* In reversing the judgment of the Court of Appeals for the Fifth Circuit, the Supreme Court specifically rejected the proposition that it is essential to show prejudice in order to demon-

**3.** *United States v. Leighton*, 386 F.2d 822 (2d Cir. 1967), *cert. denied,* 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968); *United States v. Venuto*, 182 F.2d 519 (3d Cir. 1950); *People v.*

*Noble*, 42 Ill.2d 425, 248 N.E.2d 96 (1969); *Commonwealth v. Vivian*, 426 Pa. 192, 231 A.2d 301 (1967); *Commonwealth v. Werner*, 206 Pa.Super. 498, 214 A.2d 276 (1965).

strate that such a ruling constitutes reversible error. In *Geders* no justice dissented. Justices Marshall and Brennan concurred in an opinion that took issue only with the possible inference to be drawn from the majority opinion that no constitutional infirmity would inhere in an order that barred communication between a defendant and his attorney during a "brief routine recess." Justice Marshall suggested that the general principles adopted by the opinion of the Court would be fully applicable in determining the validity of any order that barred communication between a defendant and his attorney, however brief the period of interdict, as long as the communication would not interfere with the orderly and expeditious progress of the trial. 425 U.S. at 92, 96 S.Ct. at 1337, 47 L.Ed.2d at 601. (Marshall, J., concurring).

■ It becomes apparent in the light of the principles enunciated in *Geders* that the order here promulgated by the trial justice against communication between applicant and his counsel over a weekend recess (probably more nearly approximating seventy hours than the seventeen hours at issue in *Geders*, although the exact time has not been recorded) violated applicant's right to the assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States. Further, there is no question on this record that trial counsel raised this issue and preserved an exception to the ruling.[4] For reasons that do not appear, in the absence of testimony by appellate counsel, the prohibition-of-consultation issue was not raised on direct appeal and therefore could not have been addressed in *State v. Mastracchio, supra*, when this court issued its opinion in 1973. The state contends that failure to raise this question on direct appeal constitutes a waiver of any constitutional infirmity that might have been asserted at that time in connection with the denial of assistance of counsel. The applicant, on the other hand, in an affidavit in support of his application for postconviction relief, stated:

"I did not consult with [appellate counsel] as to which of the exceptions would be briefed on appeal. I did not understand that those exceptions not briefed would be waived. I thought that any issue was preserved so long as it was listed in the Bill of Exceptions."

The state introduce no evidence in this postconviction proceeding which would tend to rebut this sworn statement by applicant. Neither the state nor counsel representing applicant during the postconviction proceeding took testimony from the attorney who represented applicant on his direct appeal. The trial justice found that failure to raise this issue on appeal did not constitute a waiver on the part of applicant. On the basis of the record before us, we are inclined to agree with the holding of the trial justice. We recently held in *State v. McGehearty*, R.I., 394 A.2d 1348, 1352 (1978) (footnote omitted), that a defendant will not be deprived of judicial review of an alleged deprivation of a basic constitutional right when "the failure to comply with the procedural requirement is not a 'deliberate bypass,' if it does not constitute 'sandbagging' by a defense lawyer, and if the record discloses that the breach complained of will constitute something more than harmless error."

*McGehearty* involved the failure of counsel to request an instruction in respect to burden of proof on the issue of intoxication as it would affect the capacity to form specific intent, when the case law apparently controlling at that time would have caused such a request for instruction to be foredoomed to denial, *see State v. Duffy*, 112 R.I. 276, 308 A.2d 796 (1973). We observed that the record in *McGehearty* was not reasonably susceptible of the inference that the trial counsel's failure to object to the instruction given or to request a different one was dictated by trial strategy or attributable to a cause other than oversight or reliance on apparently settled law.

4. Under procedures in force in 1970, preservation of issues for appeal required the noting of exceptions to judicial rulings, and appellate review was obtained through the prosecution of a bill of exceptions.

*State v. McGehearty*, R.I., 394 A.2d at 1352–53.

We have previously held that when a defendant participates implicitly or explicitly in the deliberate decision of his counsel that the trial strategy be to bypass a state procedure for asserting a constitutional right, he may be barred from relief in a postconviction proceeding. *McParlin v. Langlois*, 104 R.I. 310, 244 A.2d 251 (1968). The concurring justices in that case took the position that

> "save in exceptional circumstances, a conscious, deliberate and intentional failure by competent counsel as a part of his trial strategy to interpose contemporaneous objection to the admission of a confession will preclude the accused from arguing, even in post-conviction proceedings, that his constitutional rights were violated." *Id.* at 315–16, 244 A.2d at 254 (Joslin, J., concurring).

Both the Supreme Court and we have had difficulty in determining the extent of participation required by a defendant in order for a procedural default or strategic decision by counsel to be binding upon the client. *See Wainwright v. Sykes*, 433 U.S. 72, 91 n. 14, 97 S.Ct. 2497, 2508 n. 14, 53 L.Ed.2d 594, 610 n. 14 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *id.* at 542–53 & nn. 2 & 4, 96 S.Ct. at 1712–17 & nn. 2 & 4, 48 L.Ed.2d at 155–61 & nn. 2 & 4 (Brennan, J., dissenting); *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Fay v. Noia*, 372 U.S. 391, 438–40, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837, 868–70 (1963); *State v. Mendes*, 99 R.I. 606, 210 A.2d 50 (1965). *Wainwright v. Sykes* has to a great extent diluted the sweeping principles enunciated in *Fay v. Noia* in respect to the necessity for showing participation by a defendant in his attorney's strategic decisions, particularly where contemporaneous objection is required in order to raise the issue. However, in *State v. McGehearty, supra*, we did not adopt fully the principles of limitation outlined in *Wainwright*, at least in respect to the peculiar circumstances of *McGehearty*. It should also be noted that in *Fay v. Noia* the Court was confronted with an alleged waiver of a right to appeal. The decision to forego the appeal in *Fay v. Noia* was made under circumstances in which exposure to imposition of the death penalty might have attended the success of the appeal. Participation in the decision by the defendant was far more feasible in such a context than in the determination to raise a contemporaneous evidentiary objection as in *Wainwright v. Sykes*. When one considers the impracticality of a lawyer's discussing with his client, throughout the course of a trial, the advisability of making contemporaneous objections as compared with discussing the advantages and disadvantages of taking an appeal during the period allotted for doing so, the holdings in the two cases become less inconsistent. The instant case bears more relevance to the principles enunciated in the decision in *Fay v. Noia* than to the contemporaneous-objection decision in *Wainwright v. Sykes*. In an appropriate set of circumstances the latter case might well be more relevant.

An analysis of the record of proceedings in this case supports the trial justice's implicit determination that no inference of strategic design could be drawn from the failure of appellate counsel to raise the prohibition-of-consultation issue for direct review. No discernible benefit could accrue to applicant by reason of not asserting this basic constitutional right. Certainly there is no evidence from which a deliberate waiver by the defendant could be inferred. There is no suggestion that applicant or his attorney intentionally abandoned a known right. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). As the Supreme Court aptly observed in *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680, 699 (1942):

> "To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights."

We therefore believe that the trial justice was correct in finding as a matter of fact and holding as a matter of law that appli-

cant had not waived the issue of denial of his right to counsel by virtue of his appellate attorney's failure to raise the issue on direct appeal, particularly in light of the fact that applicant's trial attorney took specific exception to the judge's interdict of consultation with counsel during the weekend recess.

Although *Geders* would seem to be dispositive of the issue here, the state contends that the holding in that case is not determinative since the case had not been decided at the time of applicant's trial in 1970. When a new procedural safeguard has been promulgated by the Supreme Court in implementation of constitutional rights, it is true that varying determinations have been made regarding its retroactive or prospective effect. In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was determined to apply only to those cases in which conviction had not become final prior to the date of decision in *Mapp*. In *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), the rule against adverse comment upon a defendant's failure to testify in a state criminal trial, enunciated in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), was similarly held to apply only to those cases in which conviction had not become final before the date of the decision in *Griffin*. In *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Court ruled that the procedural safeguards relating to confessions mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would only be applicable to defendants whose trials commenced after the date of the decision in *Miranda*. In *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the rule in respect to the right to counsel at postindictment lineup confrontations for identification, promulgated in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), was applied prospectively to confrontations for identification which occurred after the date of the *Wade* and *Gilbert* decisions. In *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), the rules concerning electronic surveillance enunciated in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), were applied prospectively to surveillances conducted subsequent to the date of the decision in *Katz*.

In contrast, the holding on right to counsel in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), has been applied retroactively with stringent uniformity. See, e. g., *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *Kitchens v. Smith*, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); *Doughty v. Maxwell*, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964). In *Loper v. Beto, supra*, the petitioner in a federal habeas corpus proceeding raised the impropriety of impeaching his credibility by the use of four prior convictions at which, he alleged, he had not been represented by counsel. The prior convictions had occurred between 1931 and 1940 and were utilized in cross-examination in the course of a statutory-rape trial which had taken place in 1947. In spite of the fact that the principles enunciated in *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) (not requiring provision of counsel at state trials for all felonies), had constituted the law of the land through the time of the statutory-rape trial, the *Gideon* principle was retroactively applied in *Loper* to require consideration of the uncounseled-prior-conviction issue in a postconviction proceeding commenced in 1969 and considered by the Supreme Court of the United States in 1972.

It must be considered that unlike the decisions in *Mapp, Miranda, Wade, Gilbert, Katz*, and even *Gideon*, the Court's opinion in *Geders* was not perceived to be a departure from established past principles. *Geders* was a decision based upon federal and state precedents. It did not constitute a seismic innovation, comparable to adoption of a new exclusionary rule or a new requirement for provision of counsel, in cir-

cumstances where none had been applied before.

It is true that in Rhode Island trial justices have frequently, as a matter of custom, admonished witnesses under cross-examination that they should not discuss a case during a recess. The practice in criminal cases was not uniform in respect to defendants who took the stand. The state relies upon *United States v. Horger*, 547 F.2d 1204 (4th Cir.), *cert. denied*, 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 103 (1977), wherein the court of appeals declined to apply *Geders* retroactively, basing its holding on the ground that the reliability of the factfinding process was but slightly impaired by forbidding consultation between lawyer and defendant during an overnight recess. This decision would seem to run somewhat counter to the observation made in *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 437–38 (1978):

> "Moreover, this Court has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' *Chapman v. California* [386 U.S. 18, 23 [87 S.Ct. 824, 827–828, 17 L.Ed.2d 705] (1967)]. Accordingly, when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic. *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963); *Hamilton v. Alabama*, 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114] (1961); *White v. Maryland*, 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193] (1963)."

The high regard held for the right to counsel and the presumed adverse effect of its denial upon the integrity of the factfinding process are illustrated in *Geders* by the reversal of a conviction in which, just as in *United States v. Horger, supra*, no specific prejudice was shown.

We are of the opinion that the rule in *Geders* is applicable to the present case. Therefore, in view of the findings of fact and the holdings of the trial justice, we conclude that applicant was deprived of his Sixth Amendment right to counsel during his trial by virtue of the order that he not consult with counsel during the weekend recess; we also conclude that applicant did not waive the right to raise this issue in the instant proceeding.

■ We turn now to the only issue raised by the state in its cross-appeal. The trial justice determined that requiring applicant to face charges of murder in violation of G.L. 1956 (1969 Reenactment) § 11–23–1 (felony murder) and robbery in violation of § 11–39–1 violated the ban upon double jeopardy. Separate convictions in respect to felony murder and the underlying felony charge, which was an indispensable element in the greater offense, are specifically forbidden by our holding in *State v. Innis*, R.I., 391 A.2d 1158 (1978),[5] pursuant to principles enunciated in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), and earlier foreshadowed by our holdings in *State v. Grullon*, 117 R.I. 682, 371 A.2d 265 (1977), and *State v. Boudreau*, 113 R.I. 497, 322 A.2d 626 (1974).

■ The state concedes the dispositive nature of the foregoing authorities but contends that the issue had been waived by applicant's failure to raise this issue either at trial or on direct appeal. This contention is foreclosed by our holding in *Thornley v. Mullen*, 115 R.I. 505, 511, 349 A.2d 158, 161 (1975), wherein we absolved a defendant from a claim of waiver in respect to a similar right enunciated in *Boudreau*, since at the time of his trial in 1972 he had not been aware of the double-jeopardy principle to be enunciated in *Boudreau* in 1974. A fortiori applicant in the present case could scarcely be charged with knowledge in 1970 of a right that would be enunciated by this court specifically in 1978 in *Innis* and by the Supreme Court of the United States in 1977

---

**5.** *Vacated on other grounds sub nom. Rhode Island v. Innis*, —— U.S. ——, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

in *Harris.* It is also worthy to note in respect to alleged waiver by appellate counsel that applicant's appeal was decided in 1973, also well before the pertinent decisions in *Innis* and *Harris.* Thus, the trial justice was correct in vacating the conviction on the charge of robbery and dismissing the indictment therefor.

In view of the foregoing determinations, it is not necessary to address the other issues raised by the applicant.

For the reasons stated, the appeal of the applicant is sustained in part, the cross-appeal by the state is denied and dismissed, the judgment of conviction of murder is vacated, and the case is remanded to the Superior Court for a new trial on the indictment for murder.