Vincent POPE

v.

STATE.

No. 80–517–C.A.

Supreme Court of Rhode Island.

Jan. 28, 1982.

James A. Ruggerio, Providence, for petitioner.

Dennis J. Roberts II, Atty. Gen., Thomas H. Caruolo, Sp. Asst. Atty. Gen., for respondent.

## OPINION

MURRAY, Justice.

The petitioner, Vincent Pope, appeals to this court from a judgment of the Superior Court denying his application for postconviction relief. In his petition, Pope raises three issues related to his Sixth Amend-

ment right to counsel. First, he contends that his attorney was not prepared to go to trial; second, that his request that the court appoint another attorney to defend him was improperly denied; and, finally, that he was improperly denied permission to confer with counsel while he was being questioned about his prior criminal record.

The facts underlying the charges against Pope, and his subsequent conviction, are set forth in our opinion in *State v. Pope*, R.I., 414 A.2d 781 (1980), and only those pertinent to this appeal need be repeated below.

Over two months after this court decided Pope's appeal, he filed a pro se application for postconviction relief. Thereafter, through his attorney, he filed the instant amended application for postconviction relief. The petition raised four points: (1) that the petitioner was denied his right to effective assistance of counsel, (2) that the petit jury that convicted petitioner was illegally composed, (3) that charges brought against him by way of criminal information rather than by indictment violated Pope's constitutional rights, and (4) that a copy of the information with all exhibits appended thereto was not served on petitioner promptly, as mandated by statute. The Superior Court denied Pope's application for postconviction relief on all four grounds. On appeal, Pope has briefed and argued only his claim of denial of effective assistance of counsel. The three other issues raised below are therefore deemed to be waived. *Da Rosa v. Carol Cable Co.*, R.I., 397 A.2d 506, 507 (1979).

For the purposes of this appeal, we need only elucidate the facts as they pertain to Pope's instant claims. The main contention raised before this court is that Pope was denied effective assistance of counsel because his court-appointed attorney was not prepared to go to trial.

Pope was arrested on September 5, 1976, near the scene of the crimes for which he was convicted. *See State v. Pope*, R.I., 414 A.2d 781 (1980). Pope was arraigned in the District Court on September 7, 1976, and his counsel entered an appearance on Pope's behalf. Private counsel was appointed to

Pope's case because there appears to have been some conflict of interest between the defendant and the Public Defender. On September 10, 1976, Pope's counsel filed a motion for a bill of particulars. Thereafter, on October 26, counsel was sent a twenty-one-day notice that informed him that the case against Pope would be on the trial calendar in approximately three weeks. During the following week, counsel corresponded with the prosecutor assigned to the case.[1] On November 10, counsel was sent notice that the case was scheduled for trial on November 17. The next day, November 11, his attorney represented Pope at a bail-and-violation hearing that lasted for about four and one-half hours. Prior to this hearing, his counsel conferred with Pope about the facts of the case.[2] In addition to these preliminary matters, Pope's attorney also prepared several motions that were docketed on November 24. By the end of the year, the case had not yet gone to trial.

On January 1, 1977, Pope sent a letter to the presiding justice of the Superior Court in which he asked that his counsel be relieved and that another attorney be appointed to represent him. Pope's counsel testified that Pope became dissatisfied with him "as a result of the bail hearing."[3] On January 3, counsel appeared at court to seek a continuance because he had only recently received a copy of the transcript of the bail hearing and had not yet had a chance to read it. At this time, he was unaware of Pope's letter to the presiding justice. The following day, January 4, Pope was visited by his attorney at the Adult Correctional Institutions (ACI) for an hour, and counsel took extensive notes on the interview. At some point thereafter, coun-

sel was notified by the presiding justice that correspondence had been received from Pope. The presiding justice's letter to counsel inadvertently failed to include a copy of Pope's letter of January 1. Counsel therefore requested a copy of Pope's letter from the presiding justice's secretary; he still had no knowledge of Pope's request. There was another continuance in the case because Pope was in the infirmary of the ACI on January 12 for minor surgery.

During the following week, Pope's counsel left the country for approximately ten days on vacation and did not return until January 27. Upon his return, the attorney saw for the first time the correspondence from Pope to the presiding justice. Counsel appeared at court on January 31, but the case was not reached for trial on that date. The trial was finally begun on February 7, 1977. On that date, he argued that he should be permitted to withdraw as Pope's counsel. The trial justice denied the motion to withdraw, and the case proceeded to trial.

At the hearing on the instant application, Pope's trial counsel testified that he assumed that he had been relieved from his duties from the time he first found out about Pope's request to the presiding justice. He did testify, however, that he was aware that, in instances in which counsel had sought to withdraw on the eve of trial, the motions were usually denied.

Pope's trial counsel further testified that he was not prepared to go to trial on February 7. He stated that he "had not done any preparation for the trial." Trial counsel also testified that during the course of the trial, his relationship with Pope "was not

1. The twenty-one-day calendar notice mentioned five cases outstanding against Pope. Counsel wrote to the Special Assistant Attorney General to determine which case the state would prosecute first.

2. On November 29, Pope was interviewed and represented by his attorney in a District Court hearing on a marijuana charge. Pope's counsel testified at the hearing on the instant application that he had no recollection as to whether the instant case was discussed at that time.

3. Pope became upset because the trial justice set bail too high for Pope to meet. The state, however, had argued that no bail should be set at all. Thus, it is noteworthy that Pope's attorney was successful in getting the court to set any bail. We would note that Pope must be a man of very high standards since not only was he displeased with the excellent representation he received from his trial counsel but he was also unhappy with the high quality of representation which he received from the other attorney who argued this application below.

the greatest." During the trial, however, he had two conferences with Pope. The first conference took place on February 8 from 1 to 1:30 p. m. at the courthouse cell block, and the second occurred at the ACI on February 9 from 7 to 8:30 p. m., the night before Pope himself testified at the trial.

A three-day hearing on the instant application for postconviction relief was held; and the hearing justice, having carefully reviewed the record, rendered a bench decision three weeks later. He found that Pope's counsel "tried that case as good as or better than anyone else in the State of Rhode Island could have done." He specifically found that, on the basis of the events as outlined above, trial counsel "was extremely familiar with the facts and circumstances surrounding the allegations against Mr. Pope," and further that "the only reason he wanted to get out of that case [was] because his feelings were hurt because Mr. Pope had gone behind his back * * * and written to [the presiding justice] indicating he was not satisfied with [his attorney's] representation." The hearing justice thus found "no merit in [Pope's] application for post-conviction relief * * *." Pope now appeals from the judgment entered denying his application.

Pope's first claim of error is that he was denied his right to effective assistance of counsel. This claim is based on trial counsel's own comment that he had "done nothing in the preparation of [Pope's] case * *." Among the failings attributed to counsel's representation are that he did not challenge the manner in which Pope was charged (by information rather than by indictment); that he did not file or discuss with Pope the ability to file a motion to dismiss the information under Rule 9.1 of the Superior Court Rules of Criminal Procedure,[4] and G.L. 1956 (1981 Reenactment) § 12–12–1.-7;[5] that he did not file a motion to suppress the identification of Pope by the victim even though evidence was adduced at the bail hearing on November 11, 1976, that the victim's identification of Pope may have been tainted; that he did not file a challenge to the composition of the jury; and that although he filed a request for production pursuant to Super.R.Crim.P. 16, he failed to file a motion to compel production of the victim's medical records.

Pope further alleges denial of effective assistance of counsel because his attorney had little contact with him and did little preparation for the trial, facts that Pope's counsel admitted. In addition, Pope claims that his trial attorney made several errors during the trial by failing to object to the introduction of hearsay testimony on three occasions and by introducing into evidence a report that was later used against Pope.

■ Our analysis begins with our well-established rule that the findings of a trial justice in postconviction-relief proceedings will not be overturned unless he was clearly wrong or misconceived material evidence. *Delahunt v. State*, R.I., 440 A.2d 133 (1982); *Doyle v. State*, R.I., 430 A.2d 416, 418 (1981); *State v. Duggan*, R.I., 414 A.2d 788, 792 (1980). While an indigent defendant has a right to effective assistance of counsel, *State v. Desroches*, 110 R.I. 497, 293

4. Rule 9.1 of the Superior Court Rules of Criminal Procedure provides that

"A defendant who has been charged by information may, within ten (10) days after he has been served with a copy of the information, move to dismiss on the ground that the information and exhibits appended thereto do not demonstrate the existence of probable cause to believe that the offense charged has been committed or that the defendant committed it. The motion shall be scheduled to be heard within a reasonable time. (As adopted by the court October 17, 1975, effective November 10, 1975.)"

5. General Laws 1956 (1981 Reenactment) § 12–12–1.7 provides that

"Within ten (10) days after a defendant is served with a copy of an information charging him with an offense he may move in the superior court to dismiss the information on the ground that the information and exhibits appended thereto do not demonstrate the existence of probable cause to believe that the offense charged has been committed or that he committed it. Upon the filing of the motion to dismiss the court shall schedule a hearing to be held within a reasonable time."

A.2d 913 (1972), the standard for determining "effective assistance" is one of "reasonabl[eness]." *State v. Turley,* 113 R.I. 104, 109, 318 A.2d 455, 458 (1974).

■ "The question of whether defense counsel has failed to fulfill his duty to render 'reasonably effective assistance' * * * is a question of fact * * *." [Citation omitted.] *Id.* at 109, 318 A.2d at 458. In addition, the defendant bears the burden of proving such allegations. *Delahunt v. State,* at 135; *State v. Desroches,* 110 R.I. at 501, 293 A.2d at 916.

Given a petitioner's burden, the standard of "reasonably effective assistance," and the conditions under which we will reverse the trial justice, we find no merit to petitioner's claim.

■ In addition to the above-quoted remarks of the hearing justice about the quality of the representation Pope received, the trial justice also said that Pope's counsel "certainly demonstrated during the course of this trial * * * that his reputation as being one of the most able criminal lawyers is well justified." A review of the facts outlined above shows that counsel put a good deal of time into the case and that his representation of Pope was of high quality.

In contrast to Pope's claim, the record shows that his counsel did file a number of pretrial motions on September 10, 1976, and November 24, 1976, and in February, 1977; we find especially relevant the motion for a bill of particulars and the motion for production pursuant to Super.R.Crim.P. 16. Prior to trial, he filed a motion to sever one count of the information. He conducted several interviews with Pope before and during the trial. At the meeting on January 4, 1977, between Pope and his counsel, a discussion took place about one possible witness for the defense, Bumpty Ferrell.[6] During the trial itself, trial counsel rendered overall a fine quality of representation which the trial justice acknowledged.

On the basis of the foregoing analysis of the record before us, it is obvious that the quality of representation which Pope received was certainly more than "reasonably effective." There is ample evidence to support the determination of the hearing justice. We affirm the denial of postconviction relief on this issue.

■ Pope's second claim of error is that the trial justice's denial of his request for new appointed counsel was a violation of his right to counsel. In support of this claim, Pope relies on our holding in *State v. Dias,* 118 R.I. 499, 374 A.2d 1028 (1977). Unfortunately for petitioner, we considered and specifically rejected this precise claim in Pope's appeal from his conviction. *State v. Pope,* R.I., 414 A.2d 781, 786 (1980).

■ Pope's final claim of error is that he was improperly refused permission to confer with counsel while he was being cross-examined, and that this denial amounts to another violation of his right to effective counsel. While Pope was on the stand, the prosecutor cross-examined him about his prior criminal record.[7] Defense counsel requested permission to confer with Pope, but the trial justice denied the request.

In his brief, Pope relies exclusively on *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), and particularly on Justice Marshall's concurrence. In *Geders,* the United States Supreme Court held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Id.* at 91, 96 S.Ct. at 1337, 47 L.Ed.2d at 601. The Court specifically declined to reach "limitations imposed in other circumstances." *Id.* In concurring with the Court's opinion, Justice Marshall, joined by Justice Brennan, maintained that "the general principles adopted by the Court to-

**6.** Neither Ferrell nor any other possible defense witness was subpoenaed before trial. Indeed, it appears that Pope's attorney only found out about possible defense witnesses, other than

Ferrell, at the meeting he had with Pope on February 9, 1977.

**7.** This line of questioning was upheld in *State v. Pope,* R.I., 414 A.2d 781, 784 (1980).

day are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial." (Emphasis in original.) *Id.* at 92, 96 S.Ct. at 1337, 47 L.Ed.2d at 601.

This court had occasion to follow *Geders* in *Mastracchio v. Houle*, R.I., 416 A.2d 116 (1980). In *Mastracchio*, the defendant was not permitted to talk with his attorney about his trial during a weekend recess. We held that such an order violates a defendant's right to the assistance of counsel. *Id.*, 416 A.2d at 119.

The state maintains that the holdings in *Geders* and *Mastracchio* are inapposite, even in view of Justice Marshall's concurrence in *Geders*. The state claims that even the most stringent standard (Justice Marshall's) would permit a defendant to confer with his counsel only as long as the "communication would not interfere with the orderly and expeditious process of the trial." *Geders v. United States*, 425 U.S. at 92, 96 S.Ct. at 1337, 47 L.Ed.2d at 601 (Marshall, J., concurring).[8] In both *Geders* and *Mastracchio*, the orders barred communication between a defendant and his attorney during long recesses in the trial. Here, however, the trial justice refused to allow communication in the middle of cross-examination. Few things could be more disruptive of "the orderly and expeditious process of the trial" than a break in the middle of the taking of testimony. The question of whether such requests are indeed disruptive of the trial is best left to the sound discretion of the trial justice. In this case, the trial justice cannot be said to have abused his discretion under the circumstances.

For the foregoing reasons, the petitioner's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

8. Our analysis should in no way be construed as an acceptance of Justice Marshall's standard. Because of our holding on this issue, we do not need to decide the question to which Justice Marshall's opinion is addressed.