**STATE of Missouri, Respondent,**

v.

**Melvin W. LEE, Appellant.**

**No. WD32776.**

Missouri Court of Appeals,
Western District.

Jan. 4, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 1, 1983.

David M. Strauss, Public Defender, Dewey L. Crepeau, Asst. Public Defender, Columbia, for appellant.

John Ashcroft, Atty. Gen., Jay A. Daugherty, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

WASSERSTROM, Judge.

Defendant was convicted by jury under Count I of assault in the first degree and under Count II of possession of a deadly weapon while intoxicated. From a sentence entered in conformity with the verdict, defendant appeals. Affirmed.

The facts are substantially undisputed. Defendant and Brenda Jean Rugg had been living together in St. Louis, Missouri. During the day and all of the night on November 17, 1980, defendant was drinking beer and whiskey. He was also drinking on the morning of November 18, when Rugg decided to leave the defendant and go to Booneville.

Rugg traveled by bus from St. Louis to Booneville, and on her arrival there was met at the bus station by defendant who had driven from St. Louis. After persuasion by defendant, Rugg agreed to go with him in his car. He was drinking then also. She left defendant at about 4:00 p.m. and was picked up by him later at about 6:30 to 6:45. Defendant was also drinking whiskey at that time.

At about 8:30 p.m. defendant decided that he desired to go to a motel in Columbia, and he and Rugg started off on the highway in that direction. However, defendant turned off onto some gravel roads and finally drove into a farm field. They sat talking for about half an hour, mostly about defendant's desire for Rugg to come back to him. About that time, defendant drew a handgun, aimed it at Rugg and demanded that she take off her clothes.

Rugg declined to do so, and managed to get the gun away from defendant and slip it down between the car seat and the door on her side. Upon defendant's importuning, she handed the gun back and defendant placed it on the dashboard.

The two of them continued to sit in the car for another ten to fifteen minutes, during which time Rugg stated that defendant looked like he might be going to sleep. However, he did not do so, but instead picked up the gun and again aimed it at Rugg, demanding again that she take off her clothes. Rugg became afraid and this time she did take off her pants. Defendant then announced, "Baby, I love you, but you gotta go." Thereupon defendant fired the revolver, the bullet going through Rugg's hand and grazing her head.

Rugg tried to get out of the car, saying "Melvin, I'm dying." Defendant answered, "Yeah, I know you are." Rugg managed to get the door open, fell out, and started walking. Defendant followed and said, "No, you're losing too much blood. Come back here."

Defendant helped Rugg back into the car, and he drove on to Columbia where he stopped at a 7–11 store. During that ride, defendant asked Rugg not to tell anyone that he had shot her—"[H]e told me to tell them that somebody else did it, that he didn't do it, because he didn't want to go to jail."

When they arrived at the 7–11 store, defendant went in and said, "My wife's been shot and I have been too." The operators of the store then called the police and

the ambulance. At that point defendant passed out on the floor. However, before the ambulance came, defendant looked up and said "Don't mistreat her."

Rugg testified that at the time of this episode, defendant was "intoxicated," and she agreed on cross-examination that he was "very intoxicated." She based this opinion on the fact that defendant's eyes were real red, his breath smelled like liquor, and it affected the way he drove. However she also testified that the liquor had no effect upon the way he talked. She did not notice that his intoxication affected anything at all besides his driving.

The ambulance took both defendant and Rugg to the emergency room of a hospital. There, Detective Luzader who interviewed Rugg did not interview defendant because he stated that defendant was drunk. Luzader agreed on cross-examination that defendant was "heavily intoxicated," but he denied that defendant was incoherent in any way and stated, "I think he knew where he was and what was happening."

Deputy sheriff Bryson performed a gunshot residue test on defendant's hands and had some discussion with defendant in connection with that test. Bryson testified that defendant at that time was "more or less" intoxicated.

■ Defendant's sole point relied upon is the following: "The trial court erred in denying the defendant's motion for a judgment of acquittal as to Count I of the information because there was insufficient evidence to support a finding that the defendant acted knowingly or purposely or with an intent to kill or cause serious physical injury in that the state's evidence showed that the defendant was extremely intoxicated." This contention seeks to take advantage of Section 562.076 [1] which adopted a new principle of law in this state as part of the Criminal Code, effective January 1, 1979. That section provides:

"1. A person who is in an intoxicated or drugged condition whether from alcohol, drugs, or other substance, is criminal-

1. All sectional references are to RSMo 1978.

ly responsible for conduct unless such condition

(1) Negatives the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged. . . . "

The charge against defendant under Count I of the information was assault in the first degree under Section 565.050–1. That section provides:

"1. A person commits the crime of assault in the first degree if:

(1) He knowingly causes serious physical injury to another person; or

(2) He attempts to kill or cause serious physical injury to another person; or

(3) Under circumstances manifesting extreme indifference to the value of human life he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes serious physical injury to another person."

Subparagraph 1 quoted above expressly requires as an element of the crime that the defendant cause physical injury "knowingly." That subsection is therefore clearly subject to Section 562.076. On the other hand, subparagraph 3 requires only recklessness, which would not bring such an offense within the ambit of Section 562.076. The situation with respect to an offense under subsection 2 (which is the subsection under which defendant here was charged) is not so clear and may be a question. In this connection consult *State v. Helm,* 624 S.W.2d 513 (Mo.App.1981); *State v. Olson,* 636 S.W.2d 318 (Mo. banc 1982); *State v. Mannon,* 637 S.W.2d 674 (Mo. banc 1982).

This subject need not be pursued. Both parties on this appeal argue on the assumption that the defense under Section 562.076 is available in any case under Section 565.050–1, provided supported by proper proof. We shall proceed upon that same assumption.

The evidence in this case clearly shows that on the night of November 18, 1980, defendant was in some stage of intoxication. However, not every degree of intoxication constitutes a defense under Section 562.076. The new defense created by that section was comprehensively and scholarly analyzed in *State v. Gullett,* 606 S.W.2d 796 (Mo.App.1980), where the court held in part as follows at l.c. 805:

"Section 562.076 does not mean that because an intent is the product of an intoxicated mind that such intoxication is a defense. It is not every degree of intoxication that is a defense. 'The "intoxicated or drugged condition" to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibition or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime.' *State v. Guiden,* 46 Wis.2d 328, 174 N.W.2d 488, 490 (1970).

"The test for measuring the required condition has been expressed in many ways. '[U]nless he is so intoxicated that he is utterly devoid of consciousness or awareness of what he is doing', *State v. Masqua,* 210 Kan. 419, 502 P.2d 728, 733 (1972); 'utterly incapable', *State v. Bunn,* supra [283 N.C. 444], 196 S.E.2d [777] at 786 [1973]; *State v. Guiden,* supra, 174 N.W.2d at 490; 'when there is demonstrated a *total* lack of capacity such that the bodily machine completely fails', *State v. Brant,* supra, 252 S.E.2d [901] at 904 [W.Va.1979]; ' "incapable of entertaining the specific mental intent" ', *Mock v. State,* supra [2 Md.App. 771], 237 A.2d [811] at 813 [1968]; 'the condition of intoxication must be so extreme as to suspend all reason', *People v. Hayes,* supra [37 Ill.App.3d 772], 347 N.E.2d [327] at 329 [1976]; ' "of such a degree as to completely paralyze the will of the respondent, take from him the power to withstand evil impulses, and render his mind incapable of forming any sane design" ', *State v. Turley,* 113 R.I. 104, 318 A.2d 455, 459 (1974); 'incapable of consciousness that he is committing a crime; incapable of discriminating between right and wrong—stupefaction of the reasoning faculty', *Green v. State,* 342 So.2d 419, 421 (Ala.Cr.App.1977)."

To the same effect: *State v. Bienkowski,* 624 S.W.2d 107 (Mo.App.1981); *State v. Helm, supra; State v. Runyon,* 619 S.W.2d 955 (Mo.App.1981).

Under the evidence in this case, the jury could reasonably find that defendant's intoxication was not of that degree required to constitute a defense under Section 562.-076. He was able to drive from St. Louis to Booneville without mishap. He found his way to Rugg at the bus station in Booneville without difficulty, and was able to persuade her to get into his car with him and to renew their association. After extensive driving without untoward incident in and around Booneville, he made his way to an isolated spot of his own choosing.

While the events which then transpired in the car are more than a little bizarre, it must be noted that defendant carried on an extended conversation and Rugg testified that defendant's ability to speak was not affected by his drinking. Moreover, after he fired the shot, he took prompt notice of Rugg's bleeding, became solicitous of her, and insisted on driving her into Columbia for assistance. Of very special importance is the fact that defendant fully recognized that he was in legal jeopardy because of the shot, and he implored Rugg not to report him, but rather to give a false story that the shot had been fired by someone else, identity unknown. Also of importance is the fact that defendant did take Rugg into Columbia where medical assistance could be summoned.

Defendant here was no more intoxicated than was the defendant in *State v. Mannon, supra,* where it was held that the evidence of intoxication was submissible to a jury but did not foreclose a finding of intentional shooting. The factual situation here is also roughly comparable to that in *State v. Gullett, supra.*

Affirmed.

All concur.