Wayne **BARBOZA**

v.

**STATE.**

No. 84–40–C.A.

Supreme Court of Rhode Island.

Nov. 14, 1984.

Kathleen Managhan, Joseph T. Houlihan, Corcoran, Peckham & Hayes, P.C., Newport, for petitioner.

Dennis J. Roberts II, Atty. Gen., Robert E. Craven, Sp. Asst. Atty. Gen., for respondent.

## OPINION

KELLEHER, Justice.

This is an appeal from the dismissal by a Superior Court justice of a petition for postconviction relief that was filed pursuant to the pertinent provisions of G.L. 1956 (1969 Reenactment) chapter 9.1 of title 10 (1984 Cum.Supp.). The petitioner, Wayne Barboza (Barboza), seeks to set aside a guilty plea entered on his behalf in early December 1979 to a one-count indictment that charged him with the commission of common-law rape. Barboza claims that his guilty plea, because of ineffective assistance of his counsel, was entered under duress and with a total lack on his part of any knowledge about his constitutional rights.

The rape indictment was returned in December 1978 by a Newport County grand jury. At that time Barboza was represented by John T. Sheehan, Jr., an attorney who had been practicing law in the Newport County area for 6½ years. A not-guilty plea was entered on Barboza's behalf, and he was released on bail. The transcript of the hearing on the petition indicates that immediately after pleading not guilty to the charge contained in the indictment, Barboza conferred with his attorney for a period of fifteen or twenty minutes.

The next time Barboza met with his counsel was about a year later on Saturday, December 1, 1979, two days before he was scheduled to go on trial. At that time he was represented by Mr. Sheehan and Eugene F. Toro, at one time a member of the Department of the Public Defender and a practitioner with extensive experience in the criminal-law area.

Barboza told the trial justice that the first time he was aware of any thought of plea bargaining was when he conferred with his attorneys on the Saturday before the trial was to begin. Barboza then asked about the possibility of his obtaining a continuance so that he could seek other counsel. He was told that the trial justice would not grant a continuance because the case was scheduled for trial two days later, on Monday.

On Monday, December 3, 1979, the attorneys had a pretrial conference with the Superior Court justice who was to preside over the trial. After the conference they reported to Barboza that if he went to trial and was convicted, he would, in Barboza's words, "be facing twenty-five years," but "if I took a plea of nolo, I could get five." Barboza also said that he was insisting on the nolo plea because "I couldn't admit to my guilt."

The only other witness at the 1980 hearing on Barboza's petition who testified about what happened between the time of the return of the rape indictment and the day of trial was Attorney Sheehan, who

corroborated the fact that there were two meetings between Barboza and his counsel prior to the day he was sentenced. The attorney also reported that Barboza was informed that if he went to trial, the maximum penalty could be life imprisonment but that the "best estimate" would be that the trial justice would impose a twenty-five-year sentence.

When the case was called ready for trial, Attorney Toro told the trial justice that Barboza "after careful consultation and reflection * * * would like to withdraw his previously entered plea of not guilty and request the court to accept a plea of nolo to the charge." The trial justice responded by saying that the court would accept on the trial day only a plea of guilty, not a plea of nolo. The attorney then entered a plea of guilty. Thereafter, the trial justice imposed a ten-year sentence but suspended the execution of the last five years of the term, pointing out that during the final five years Barboza would be on probation.

Barboza was asked if he recalled what the trial justice had said at the time of sentencing, and he stated that although he was aware that the trial justice had spoken as he left the courtroom, "nothing meant anything to me. I knew I was going to prison and that was it."

In *State v. Dufresne*, R.I., 436 A.2d 720, 722 (1981), we noted that the focus of a postconviction inquiry in a situation in which there has been a guilty plea is the nature of counsel's advice concerning the plea and the voluntariness of the plea. Recently, in *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), the Court, in reiterating that the proper standard for measuring an attorney's performance is that of reasonably effective assistance, ruled that before a convicted defendant can prevail on his claim of ineffective assistance of counsel, proof must be adduced by the defendant's indicating that the performance of counsel was deficient and that the deficient performance worked to the prejudice of the defendant. Justice O'Connor also empha-

sized that the reasonableness of counsel's action might well be determined or substantially influenced by the defendant's own statements or actions because if a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or perhaps even harmful, failure to pursue these investigations cannot be challenged as unreasonable. *Id.*, —— U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695–96.

With this latter observation in mind, we find that there is an absence of anything in the record concerning the subject matter of the conversations that actually took place between Barboza and his counsel on the occasions when they did meet. The record does contain an affidavit in which Barboza on December 3, 1979, avers that counsel explained to him the nature of the charge and the consequences of his guilty plea. The affidavit also indicates that Barboza was well aware that he was to receive a ten-year sentence at the Adult Correctional Institutions with five years to be served and the remainder of the term suspended during an ensuing five-year probationary period.

Again, when we examine the transcript of the events that occurred before the sentencing justice, we find that an assistant attorney general described the evidence the state was prepared to introduce. Some of the evidence would have indicated that Barboza had tried to choke the victim when she attempted to resist his advances. When Barboza was asked by the trial justice if he understood that by pleading guilty he was admitting to the fact that he "did, in fact, rape this young lady," the response was, "Yes, sir." The sentencing justice then went on to discharge his constitutional duties as he explained to Barboza the various constitutional rights he was surrendering. After concluding his explanation, the trial justice then asked Barboza if he was willing to give up "all of these rights," and Barboza once again responded in the affirmative. The record also indicates that the victim, who was present in the court-

room at the time the plea was received, offered no objection to the disposition.

On this record we are of the belief that Barboza has utterly failed to sustain his burden of proof in demonstrating that the services rendered by his counsel were deficient. Since he has failed to satisfy the first facet of the burden of proof that was his, we see no necessity even to consider the question of prejudice.

Accordingly, Barboza's appeal is denied and dismissed, and the judgment appealed from is affirmed.