Douglas CROMBE

v.

STATE.

No. 91–136–C.A.

Supreme Court of Rhode Island.

May 1, 1992.

Richard Casparian, Public Defender, Janice Weisfeld, Barbara Hurst, Asst. Public Defenders, for plaintiff.

James E. O'Neil, Atty. Gen., Michael Egan, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for defendant.

OPINION

PER CURIAM.

This matter was before this court pursuant to an order issued to Douglas Crombe (Crombe) to appear and show cause why the denial of his application for postconviction relief should not be summarily resolved.

After reviewing the memoranda submitted by the parties and after hearing their counsel in oral argument, this court concludes that cause has not been shown.

On October 2, 1987, Crombe was charged by information with assault with intent to murder and with possession of marijuana. Crombe entered a plea of nolo contendere to the charge of assault with intent to murder on March 8, 1989, just prior to his scheduled trial. Crombe filed an application for postconviction relief on March 23, 1990. After an evidentiary hearing the petition was denied, and Crombe now appeals to this court.

On appeal Crombe claims that he was denied effective assistance of counsel, which caused him to plead nolo contendere. But for his attorney's failures, Crombe argues, the outcome of the case would have been different. The question of whether an attorney has failed to render reasonably effective assistance is a question of fact, which defendant bears the burden of proving. *Pope v. State*, 440 A.2d 719, 723 (R.I.1982). To determine whether counsel's representation was reasonably effective, one must look to the record. *Delahunt v. State*, 440 A.2d 133, 135 (R.I.1982).

The record in the instant controversy indicates that attorney John Cicilline (Cicilline) initially represented Crombe. Cicilline is one of the more experienced criminal

defense attorneys in this state. Cicilline filed a motion for discovery and inspection, a motion to suppress, a motion to be furnished with evidence favorable to the accused, and a motion to suppress evidence gained as a result of illegal arrest. The discovery package submitted by the state includes statements by the victim, by a witness petitioner considers a possible alibi witness, by several police officers, and by a medical witness.

The record shows that Cicilline was counsel of record as of March 6, 1989. On that date the matter was continued. On March 8, 1989, Crombe entered a plea of nolo contendere and Edward Romano (Romano), who was affiliated with Cicilline's office, represented him at that time.

Crombe claims that Romano met with him only once, on the evening before trial, and spent only a few hours preparing the case. Romano testified that he reviewed the case four or five days before it was due to go to trial. He estimated that he spent eight to nine hours in independent review and two to three hours going over the case with Cicilline. The record does not indicate how often Cicilline met with Crombe or the amount of work he did in preparing this case.

Crombe also contends that Romano should have interviewed Thomas Conway (Conway), a possible alibi witness. Crombe notes the state's allegation that the incident occurred at approximately 6:05 p.m. Conway stated that he first saw Crombe while he was driving home at 5:15 p.m. on the day in question. Crombe waved him down, told him his car would not start, and asked him to help jump-start it. Conway relates that he accompanied Crombe to his car, which was parked about 200 yards into the woods. As he passed the car, Conway saw a girl lying face down in the back seat. Unable to start the car, Conway gave Crombe a ride to a phone and went on his way. He then saw the same girl who had been lying in the stalled car run onto the road screaming for help. According to his statement, her eyes were totally shut and she was badly beaten. He called the police and rescue vehicles for her. The state police officer who first arrived on the scene stated that he received the call from Conway at 6:05 p.m.

The victim stated that Crombe, with whom she had been living for six years, began beating her on the day in question because he believed she was involved with other men. She states that he hit her face, legs, and arms and then took a hammer and told her that her time was up. Although he tried to hit her with the hammer, she managed to wrest it away from him. He also told her that if the car had started, he would have left her in the woods and she would have been "gone." The victim stated that Crombe left her in the car and went to get someone (Conway) to help him with the car. After Crombe and Conway had failed to start the car and then left to find a phone, the victim got out of the car to seek help and was picked up by Conway.

The standard for reviewing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93.

*Strickland* sets forth a two-part test to determine whether counsel's assistance is ineffective.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *See Brown v. Moran,* 534 A.2d 180 (R.I. 1987).

We are of the opinion that Romano's not pursuing Conway as an alibi witness was not unreasonable considering the circumstances.[1] It is difficult to conceive of Conway as an alibi witness. The assault apparently occurred prior to Conway's arrival on the scene. He witnessed the victim lying face down, motionless, on the back seat of Crombe's car. The police received the call from Conway at 6:05 p.m. It is obvious that the victim was beaten prior to this time.

In discussing the second component of the two-part test, the *Strickland* Court explained that to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In the instant case the evidence against Crombe, including testimony of the victim, Conway, and the police officers who responded to the scene, was quite substantial. In addition Romano's discovery package contained a medical history as dictated by the assistant for the doctor who examined the victim. The doctor noted severe swelling about the victim's head and multiple contusions over her body. The doctor also noted that the amount of swelling was so extensive that he had difficulty recognizing the victim when he first saw her. Suffice it to say that there was, at the very least, adequate evidence to prove intent to kill. Therefore, we believe it was reasonable for Romano to advise Crombe to plead nolo contendere to a charge of assault with intent to murder. If Romano had advised Crombe to go to trial, he could now be serving the maximum twenty years for the crime charged rather than the eight years he is currently serving.[2]

Therefore, Crombe's appeal from the denial of his application for postconviction relief is denied and dismissed, and the case is remanded to the Superior Court.

---

1. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984), where the Court stated, "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."

2. Crombe was sentenced to fifteen years' imprisonment with eight years to serve, seven years suspended, and seven years' probation.