**STATE**

v.

**Thomas BRENNAN.**

**No. 92–201–C.A.**

Supreme Court of Rhode Island.

July 1, 1993.

Jeffrey Pine, Atty. Gen., Annie Goldberg, Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Paula Lynch Hardiman, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on an appeal from the denial of the applicant Thomas Brennan's application for postconviction relief filed pursuant to G.L. 1956 (1985 Reenactment) chapter 9.1 of title 10. We affirm.

Thomas Brennan (Thomas) and his brother, Michael Brennan (Michael) were tried separately for the brutal slaying of eighty-one-year-old Lawrence Bello. Each was convicted of felony murder and sentenced to life imprisonment. Both brothers appealed the convictions. In *State v. Michael Brennan*, 526 A.2d 483 (R.I.1987), this court addressed the issues common to both appeals. In *State v. Thomas Brennan*, 527 A.2d 654 (R.I.1987), we addressed only those issues pertaining to Thomas's appeal. The convictions were both upheld.

Subsequently Thomas filed an application for postconviction relief based on his trial counsel's failure to challenge his warrantless arrest in the dwelling of his girlfriend, Marguerite Napolitano (Napolitano). The Superior Court justice denied the application and determined that trial counsel's failure to raise that particular issue did not constitute ineffective assistance of counsel. We agree with that determination.

The facts relating to this murder can be found in detail in *State v. Michael Brennan, supra,* and reference was again made to them in *State v. Thomas Brennan, supra.* The sole issue on appeal is the effectiveness of Thomas's representation at his 1985 trial. The applicant may not relitigate his Fourth Amendment claims in this appeal. The only issue before us is whether his trial counsel was constitutionally deficient in failing to include, among his several arguments for suppression, a particular claim that his warrantless arrest in the apartment of his girlfriend was per se unreasonable.

The absence of a suppression argument relating to the warrantless arrest in the

trial below is central to this application. The applicant asserts that the fruits of this warrantless arrest were highly prejudicial and led to his conviction. The fruits of the warrantless arrest were two statements made to police that were later used against him at trial as false exculpatory statements, photographs taken at the time of the arrest and used to identify him in four photo spreads shown to four witnesses, and a photograph of his hand taken at the time of arrest and produced at trial to show that his hand was bruised. The applicant contends that he would not have been found guilty if this evidence was excluded.

I

■ "Of all the rights that an accused person has, the right to be represented by counsel is by far the most persuasive, for it affects his ability to assert any other rights he may have." *Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305, 321 (1986) (quoting Schaefer, *Federalism and State Criminal Procedure,* 70 Harv. L.Rev. 1, 8 (1956)). A criminal defendant's "right to counsel" under both the Rhode Island and the United States Constitutions entitles him or her to competent and effective assistance of counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *State v. Cochrane,* 443 A.2d 1249 (R.I. 1982).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-part test for evaluating a claim of ineffective assistance of counsel. This court immediately recognized the *Strickland* test, and we have repeatedly patterned our evaluations of ineffective-assistance-of-counsel claims under its requirements. *Barboza v. State,* 484 A.2d 881 (R.I.1984).[1]

Under *Strickland* a complaining defendant must meet certain criteria to establish

---

1. *See also Hughes v. State,* 609 A.2d 943 (R.I. 1992); *Crombe v. State,* 607 A.2d 877 (R.I.1992); *Binello v. State,* 601 A.2d 951 (R.I.1992); *DeCiantis v. State,* 599 A.2d 734 (R.I.1991); *Clark v. Ellerthorpe,* 552 A.2d 1186 (R.I.1989); *Tarvis v. Moran,* 551 A.2d 699 (R.I.1988); *Brown v. Moran,* 534 A.2d 180 (R.I.1987); *State v. Burke,* 529 A.2d 621 (R.I.1987).

that counsel's assistance was ineffective. The two-part test requires that

"[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

The Supreme Court further stated that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Tarvis v. Moran*, 551 A.2d 699, 700 (R.I.1988) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93).

■ The burden of proving a claim of ineffective assistance of counsel lies with the party asserting the claim. *Cochrane*, 443 A.2d at 1251 (citing *Delahunt v. State*, 440 A.2d 133 (R.I.1982), and *State v. Turley*, 113 R.I. 104, 318 A.2d 455 (1974)). *See also State v. Desroches*, 110 R.I. 497, 293 A.2d 913 (1972).

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694–95 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83, 93 (1955)).

■ The hearing justice concluded that applicant had not met the burdens outlined in *Strickland* and refused to grant him relief. We shall overturn such findings only when the hearing justice was clearly

wrong or when it is clear that material evidence has been overlooked or misconceived. *Fontaine v. State*, 602 A.2d 521, 526 (R.I.1992); *Brown v. Moran*, 534 A.2d 180, 183 (R.I.1987). We find neither of these situations in this case.

## II

The first part of the *Strickland* test can be met only if a party shows "that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. * * * In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

In an attempt to meet this first part of the *Strickland* test, Thomas erroneously relies on a footnote in our decision in *State v. Michael Brennan*, to illustrate his trial counsel's deficient representation. He argues that our refusal to consider a suppression argument relating specifically to the warrantless arrest in the home of Napolitano in the appeal because it was not raised properly below supports his assertion that his counsel was deficient. In that opinion we noted:

"Nowhere in the record do we find any motion to suppress statements derived from defendant's arrest in a dwelling house in which police had not obtained consent to enter from any of the residents. There was no memorandum of law on this issue filed below, and it was not argued before the trial justice at the suppression hearing. Since defendant never brought the issue of the warrantless arrest in a dwelling house to the attention of the trial justice at the hearing, the justice did not make any findings of fact as to who let the officers into the residence at 1400 Douglas Avenue, as to whether the entry was consensual, or as to whether the arrest was validly made

with a warrant." *Brennan*, 526 A.2d at 487 n.1.

The state correctly asserts that this language could not be construed to suggest that there was no recorded effort to suppress the fruits of the arrest.

After a thorough review of the record we have found the contrary to be true. The applicant's counsel filed among several pretrial motions: a motion to sever defendant's trial from that of his brother and co-defendant; a motion to compel more responsive answers to discovery; a motion for appointment of an investigator; a motion to suppress evidence obtained in violation "of the Constitution of the State of Rhode Island, the Constitution of the United States and all applicable case law pertaining thereto"; a motion to suppress "written and/or oral" statements "illegally obtained" by police; a motion to suppress in-court identifications as "tainted in that the pretrial identification of the defendant's person was in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States and the comparable provisions of the Constitution of the State of Rhode Island"; and a motion to require the state to furnish notice of statements of rewards, promises, or inducements made to prospective witnesses in exchange for their testimony.

The joint hearing on pretrial motions of both Thomas and Michael comprised over four volumes of testimony. Over the course of four days, both brothers took advantage of the opportunity to make several zealous suppression arguments. Such motions were pressed vigorously and denied. In addition a review of the trial transcript indicates that counsel used every opportunity to present a thorough, creative and strategic defense. The applicant received zealous representation throughout the trial. His counsel, as we noted in *Tarvis v. Moran*, 551 A.2d at 701, was a "respected attorney who has had more experience in criminal trials than most members of our trial bar."

■ We remind applicant that a review of counsel's representation is done through the case law existing at the time of trial. Since applicant's trial took place in 1985, the law existing then, not now, is controlling in our evaluation. Trial counsel has no duty to predict a potential change in the law by this court or by the United States Supreme Court. Failure to anticipate a change in the existing law does not constitute ineffective assistance. We believe that a review of the case law existing at the time of trial and the developments since trial are necessary to evaluate counsel's performance and applicant's position better.

■ As early as 1960 the United States Supreme Court did recognize that a houseguest arrested in a friend's apartment during the execution of a search warrant had a Fourth Amendment right to challenge the search of the premises because he or she was "legitimately on the premises." *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In *Jones* the petitioner was present at the time of the search of an apartment owned by a friend. *Id.* at 259, 80 S.Ct. at 730, 4 L.Ed.2d at 701. The friend had given Jones permission to use the apartment and a key to it, with which Jones had admitted himself on the day of the search. *Id.* He had some clothing in the apartment and slept there on occasion, but his home was elsewhere. *Id.* At the time of the search Jones was the only occupant of the apartment because the lessee was away for a period of several days. *Id.* In these circumstances the Supreme Court held that while one wrongfully on the premises could not move to suppress evidence obtained as a result of searching them, "anyone legitimately on the premises where a search occurs may challenge its legality." *Id.* at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706.

Although it is true that an expectation of privacy was afforded a houseguest as early as 1960 in *Jones*, the hearing justice correctly decided that *Jones* was not the existing standard for evaluating Fourth Amendment violations in light of the more recent *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In that case, in which the petitioners, who were passengers

in an automobile, claimed that they had standing to contest the legality of an automobile search, the Supreme Court retreated from the broad "legitimately on the premises" standard set forth in *Jones.* They argued that their occupancy of the automobile was comparable to that of Jones in the apartment. *Id.* at 141, 99 S.Ct. at 429, 58 L.Ed.2d at 400. The Supreme Court held that the legitimately-on-the-premises standard "create[d] too broad a gauge for measurement of Fourth Amendment rights." *Id.* at 142, 99 S.Ct. at 429, 58 L.Ed.2d at 400. Clarifying *Jones,* the Court stated that

> "*Jones* on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other then his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place. * * * But the *Jones* statement that a person need only be 'legitimately on the premises' in order to challenge the validity of the search of a dwelling place *cannot be taken in its full sweep beyond the facts of that case.*" (Emphasis added.) *Id.* at 142–43, 99 S. Ct. at 430, 58 L. Ed. 2d at 400–01.

The petitioners' claim in *Rakas* failed because they did not assert a "property nor a possessory interest" in the automobile. *Id.* at 148, 99 S.Ct. at 433, 58 L.Ed.2d at 404. The fact that they were in the car with the owner's permission was not enough. *Id.* The Court distinguished *Jones* and *Rakas* by pointing out that

> "petitioners' claim is one which would fail *even in an analogous situation in a dwelling place,* since they made no showing that they had a legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers." (Emphasis added.) *Id.*

Though *Rakas* restricted the legitimately-on-the-premises standard, the specific factual holding of *Jones* was affirmed.

If one compares the factual holding of *Jones* to applicant's situation here, it would still not have been unreasonable for counsel to omit a particular challenge to the

arrest in Napolitano's apartment because Thomas did not enjoy the same expectation of privacy. Although he may have been legitimately on the premises, his situation is distinguishable because no evidence was presented even to suggest that he had any dominion or control over Napolitano's apartment. Again, in *Jones,* Jones not only had permission to use his friend's apartment, but had a key to it as well and kept personal possessions in the apartment. *Id.* at 149, 99 S.Ct. at 433, 58 L.Ed.2d at 404–05. Except for the actual lessee of the apartment, "Jones had complete dominion and control over the apartment and could exclude others from it." *Id.* at 149, 99 S.Ct. at 433, 58 L.Ed.2d at 405. Nothing in the record indicates that Thomas had any possessory interest in the apartment.

In an effort to overlook *Rakas,* applicant aligns himself with the facts of *Jones* and further maintains that counsel should have argued for suppression of the arrest under *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In *Payton* the Supreme Court held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576, 100 S.Ct. at 1375, 63 L.Ed.2d at 644. *Payton* is also distinguishable from the present case in that *Payton* relates to an expectation of privacy in a suspect's own home and does not specifically apply to the home of another. The *Payton* Court expressly declined to consider "the authority of the police, without either a search or arrest warrant, to enter *a third party's home* to arrest a suspect." (Emphasis added.) *Id.* at 583, 100 S.Ct. at 1378, 63 L.Ed.2d at 649.

In this case the police did have a warrant for Napolitano and arrested her in her home, after an adult occupant allowed the police to come in. *Payton* is not applicable to the arrest of the Brennan brothers. The Brennan brothers were subsequently arrested in Napolitano's home without a warrant. Failure to overlook the principles of *Rakas,* which was the law at the time of the trial, and failure to construct a tenuous argument under *Payton* would hardly qualify as unreasonable representation outside

the objective standards of competent representation.

The postconviction-hearing justice also noted that in *Steagald v. United States*, 451 U.S. 204, 101 S. Ct 1642, 68 L.Ed.2d 38 (1981), that the police cannot legally search for the subject of an arrest warrant in the home of a third party without also obtaining a search warrant if they seek to introduce evidence of the fruits of the entry *against the third party.* We have acknowledged in *State v. O'Dell*, 576 A.2d 425 (R.I.1990), that it is the third party who is within the scope of the protection offered by *Steagald.* Therefore *Steagald* is also not applicable to applicant's argument.

The applicant concedes that the standing of an overnight guest to raise Fourth Amendment violations "was between 1978 and 1990, a question subject to various interpretations by various courts." We held as late as 1989 that status as an overnight guest alone is, without more, insufficient to establish a legitimate expectation of privacy. *State v. Wright*, 558 A.2d 946 (R.I.1989). It was not until 1990, five years after trial, that these previous federal decisions and our own decision in *Wright* proved to be incorrect when the United States Supreme Court explained *Rakas* in *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

In 1990 *Olson*, referring back to *Jones*, specifically recognized that status as an overnight guest alone would be enough to show an expectation of privacy. The applicant argues that we should consider *Olson* in light of *Payton* and *Jones* to find that his counsel was ineffective by not launching a suppression argument based on his status as an overnight guest. *Olson*, however, was decided five years after applicant's trial took place and cannot be considered in a review of counsel's performance in 1985. As we previously stated, counsel can not reasonably be expected to anticipate the doctrines not yet adopted by the United States Supreme Court.

We agree with the postconviction-hearing justice's finding that because *Olson* had not been decided at the time of the Brennans' trials, trial counsel did not act unreasonably in failing to raise the issue of the warrantless search. The hearing justice correctly found that *Rakas* governed the case at the time of trial and that under *Rakas*, Thomas would not have been able to establish standing to challenge his warrantless arrest. The applicant has failed to establish that the failure to raise a particular challenge to the warrantless arrest under *Payton* in anticipation of *Olson* was not "the result of reasonable professional judgment."

### III

Interpreting the second part, or the prejudicial aspect, of the *Strickland* test, the Court pronounced that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. A party alleging ineffective assistance of counsel must show that the deficiencies in counsel's performance were prejudicial to the defense. *Id.* at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. "It is not enough * * * to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.

A party raising an ineffective-assistance claim for the failure to raise a Fourth Amendment suppression argument is required to meet not only the stringent criteria under *Strickland* but also the requirements under *Kimmelman v. Morrison.* Under the *Kimmelman* test,

"[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is *meritorious* and that there is a reasonable probability that the *verdict would have been different* absent the excludable evidence in order to demonstrate actual prejudice." (Emphasis added.) *Kimmelman*, 477 U.S. at 375, 106 S. Ct. at 2583, 91 L. Ed. 2d at 319.

Thomas would have to meet the requirements of both *Strickland* and *Kimmelman* in order to prevail in his petition for postconviction relief.

Since we have already determined that applicant has not met his burden of showing that his counsel was ·deficient in his representation under the first part of the *Strickland* test, "we need not address the prejudice component of the *Strickland* test." *Brown v. Moran*, 534 A.2d at 183. "[T]here is no reason for a court deciding an ineffective assistance claim * * * to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699).

We shall, however, address applicant's inconsistent and misplaced reliance on *Olson* and his attempt to refute *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) in his prejudice argument.

Interestingly enough, on the same day that *Olson* was decided, *Harris* was issued. While applicant urges this court to consider *Olson*, which would support his expectation of privacy, he would like us to ignore the holding of *Harris*. The applicant would like to have his cake and eat it too.

█ In *Harris* the Supreme Court distinguished statements obtained in the home and statements made once outside the home. A violation of the Fourth Amendment prohibition against a warrantless, nonconsensual entry of a suspect's dwelling to effect an arrest does not require suppression of a statement made by the suspect after his removal from the residence if there was probable cause for the arrest. *Harris*, 495 U.S. at 20, 110 S.Ct. at 1649, 109 L.Ed.2d at 21–22. The applicant acknowledges that even though *Payton* and its progeny was designed to protect the integrity of the home, *Harris* held that when the arrest is supported by probable cause and a defendant is in lawful custody, any statements made *outside the home* need not be suppressed.

This court has previously concluded that the arrest of the Brennan brothers was supported by probable cause. *State v. Michael Brennan*, 526 A.2d at 486–87. In *State v. Michael Brennan* we reviewed the standard for ascertaining whether an arrest had been made pursuant to probable cause and concluded that the police had indeed had probable cause to arrest the brothers for the murder of Lawrence Bello. *Id.* at 485. "Probable cause to arrest exists if, at the time of the arrest, the arresting officer had knowledge of the facts and circumstances, based on reasonable trustworthy information, sufficient to cause a prudent officer to believe that the suspect had committed or was committing a crime." *Id.* (citing *State v. Pacheco*, 481 A.2d 1009, 1022 (R.I.1984); *State v. Belcourt*, 425 A.2d 1224, 1226 (R.I.1981)). Our extensive review of the testimony in *State v. Michael Brennan* led us to the conclusion that

> "the trial justice was justified in finding that the Providence Police had probable cause to arrest Michael and Thomas Brennan. Not only were the officers certain that a horrible homicide had been committed, the particular factual context presented above reasonably led the officers to believe there existed a strong probability that the Brennan brothers were involved in Mr. Bello's death. Detectives had gathered as much evidence as they could; there were no eye witnesses to the murder. The totality of the circumstantial evidence that they had amassed pointed at motive, opportunity, and flight on the Brennans part. All this evidence, combined with the brothers' criminal records and Michael's admissions to patrons in the Safari lounge, provided the officers with probable cause to arrest the Brennans." 526 A.2d at 486–87.

We concluded in *State v. Michael Brennan* that the arrests of the Brennans were supported by ample probable cause and were legal arrests. Although the trial justice did not specifically make a finding on the issue of consent, an independent review of the testimony elicited at the pretrial hearing and throughout the trial indicated that there was sufficient evidence to support a finding that Nancy Ross, an adult

guest of Napolitano's, answered the door and permitted the police officers to enter the apartment. The trial justice accepted the testimony of the officers and found that probable cause supported the legal arrest. Thomas himself testified at the suppression hearing that he "was coming out of the bathroom" at the apartment at 1400 Douglas Avenue at 11 p.m. on January 19, 1984, when he "heard a knocking at the door and Nancy Ross answered the door and it was the North Providence Police."

▮ The applicant argues that under the existing state law at the time of trial his arrest would have been illegal because it was a "pretext arrest." He contends that his counsel's failure to assert this theory during the suppression arguments further emphasizes his counsel's ineffective assistance and prejudiced the outcome of his case.

The North Providence and the Providence police went to Napolitano's apartment with knowledge of an outstanding shoplifting warrant for Napolitano from North Providence. In addition, there were outstanding arrest warrants for Michael from the city of Warwick and from the Department of Natural Resources. A check on the criminal records of the Brennans revealed that they both were convicted felons with extensive criminal records. Both Michael and Thomas had been arrested for robbery in the past, and Thomas had been previously charged with murder and convicted of manslaughter. Admittedly the police went to the Douglas Avenue apartment in anticipation of apprehending the Brennans regarding the murder of Lawrence Bello. They had gathered information from various informants that indicated that the Brennans were probably hiding out in Napolitano's apartment. They also had reason to believe that Michael, who had recently come back to Rhode Island from Florida, might be planning to return south.

The applicant contends that his counsel should have relied on the prohibition against pretext arrests in *United States v. Lefkowitz,* 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932) and *United States v. D'Alo,* 486 F.Supp. 945 (D.R.I.1979), and the pronouncements against pretext arrest by various jurisdictions to argue that his arrest was illegal and that the fruits of the arrest should have been suppressed. Operating on the assumption that the arrest was an illegal-pretext arrest, applicant contends that a defendant in Rhode Island has been afforded more protection under the Rhode Island Constitution both at the time of his trial and in the present than under the United States Constitution.

Contrary to the current federal rule under *Harris* that suppresses the fruits of a warrantless nonconsensual arrest only when there is no probable cause, in *State v. Bailey,* 417 A.2d 915, 917 (1980), we did hold that fruits of a warrantless, nonconsensual arrest must be suppressed unless purged of the primary taint, *even though the arrest was supported by probable cause.* This exclusionary rule was adopted because illegal "[a]rrests made without a warrant or without probable cause * * * would be encouraged by the knowledge that evidence derived therefrom could well be admissible at trial * * * ." *State v. Burns,* 431 A.2d 1199, 1205 (R.I.1981) (quoting *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 426 (1975)). We note, however, that our decision in *Bailey* mirrored *Payton,* finding that a warrantless, nonconsensual *arrest of a defendant in his home* violated his rights under both the Rhode Island and the Federal Constitutions. *Payton* as well as *Bailey* applied to a situation in which the entry was made into the suspect's own home and not that of another. At the time of trial neither Rhode Island nor the United States Supreme Court had given such protections to a suspect in a third party's home, making neither *Bailey* nor *Payton* applicable to the Brennans' arrest.

Perhaps in hindsight, trial counsel might have made an independent argument at trial that the illegality of a pretext arrest under *Lefkowitz* or *D'Alo* required the fruits of applicant's arrest to be suppressed under our own *Burns.* The "pretext warrant" that was allegedly used to apprehend

the Brennans, however, was not specifically related to Thomas, but rather the existing warrants were for his brother, Michael, and Napolitano. The United States Supreme Court has not had occasion to rule specifically on the legality of pretext arrests since *Lefkowitz* was decided in 1932. Given that fact and the fact that the pretext arrest dealt with a warrants for Michael and Napolitano, it is likely that applicant's trial counsel elected to focus on what he believed to be his stronger suppression argument, a lack of probable cause.

In conjunction with his probable-cause argument in his written memorandum in support of his motion to suppress, applicant's counsel incorporated the pretext-arrest issue into his argument when he wrote that:

> "the whole elaborate setting up of the 'pretext' arrest of Marguerite Napolitano simply underscores that the police knew that they did not have probable cause at the time of the arrest * * * and that information which is turned up as a result of an arrest can not be used to bootstrap the legality of the original arrest."

In addition at the joint pretrial hearing Michael's trial counsel did orally argue that even if the court found that probable cause did exist, the arrest was illegal because it was made in the pretext of a warrant for a lesser unrelated charge. It would seem logical that Thomas's counsel would forego that particular argument on behalf of his client and focus on his presumably stronger argument for lack of probable cause. The choice of this particular strategy was certainly reasonable given the circumstances of the trial.

The applicant correctly argues that applying the *Harris* ruling where the fruits of even an illegal arrest are admitted at trial against a defendant to Thomas's case would be improper. He states in his brief that "[p]rinciples of fundamental fairness * * * dictate that Thomas Brennan's case be governed by the rules that existed at the time of his trial—the rules that would have been applied but for trial counsel's failure to raise the Fourth Amendment issue."

Ironically, in making this argument, he wants us to apply *Olson*, ignore *Harris* (both of which were not in existence at the time of trial), and consider certain Rhode Island cases that were in existence at the time of the trial but which are not applicable to Thomas's appeal.

We have not had occasion specifically to reconsider *Bailey* in relation to an illegal arrest not supported by probable cause since *Harris* was decided, and we believe that this is not the proper case to do so. We do, however, draw attention to our recent pronouncement in *State v. Werner*, 615 A.2d 1010 (R.I.1992), where we eliminated conflicting Fourth Amendment interpretations that evolved in Rhode Island over the last decade, concluding that "state courts should respect that manner in which [the Fourth Amendment] is interpreted by the Supreme Court." *Id.* at 1014.

■ The *Strickland* Court cautioned that in reviewing a claim of this nature, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In measuring counsel's performance, we are not in a position to recalculate strategic decisions that he or she may have made. We shall only consider whether counsel's representation was within the objective standards of representation required under *Strickland.* "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. We are not in the business of second guessing the strategic choices of trial counsel when their choices are clearly reasonable and within the bounds of competent representation. Defense counsel's election of one strategy focusing on probable cause rather than a challenge under the pretext-arrest theory against the warrants of others was not unreasonable.

Similarly in *Brown v. Moran*, 534 A.2d at 182, "[t]rial counsel chose not to argue" that the defendant's confession was involuntary as a basis for suppression but ar-

gued "that since the police had no probable cause to arrest him on the afternoon of the murder, his confession was illegally obtained." *Id.* We noted that "[i]f that argument had been successful, the statement would have been suppressed and excluded from trial." *Id.* We agreed with the trial justice in that counsel's decision of foregoing the issue of involuntariness "in favor of focusing attention on and pursuing the probable cause to arrest issue, fell within that acceptable range of latitude afforded defense counsel to determine trial strategy and therefore was not unreasonable." *Id.* at 183.

We remind applicant that we can only consider his claim in light of the case law that existed at the time of trial. Therefore, his arguments to consider *Olson* and ignore *Harris* are both unsuccessful. Like the situation in *Brown*, reasonable arguments were advanced and zealously pressed that if successful would have resulted in suppression. The fact that these arguments failed does not establish that an argument under *Payton* was unreasonably omitted, given the then current Fourth Amendment cases. We can not review the trial counsel's representation through the rose colored glasses of *Olson.*

 Even if the failure to raise these specific Fourth Amendment issues were unreasonable, Thomas's claim for ineffective assistance of counsel would not survive the prejudice component of the ineffective-assistance review process. We agree wholeheartedly with the postconviction-hearing justice when she stated:

"[w]ith respect to the prejudice component, I believe that the lack of merit of the petitioner's claim is even more apparent on this score. The evidence that the petitioner says should have been excluded would barely have reduced the heavy weight of the evidence against him, and hence, the verdict reached. The petitioner attempted to maximize, I believe, the value of the fruits of his arrest. However, the exculpatory statement and photographs can hardly be regarded as significant when one considers it alongside the evidence and the testimony which was offered against Mr. Brennan during the actual trial of this case."

After a thorough review of the record and the trial justice's decision denying Thomas's application for postconviction relief, we conclude that the applicant has failed to meet the requirements under both *Strickland* and *Kimmelman* and we affirm the order appealed from.

For these reasons the applicant's appeal is denied and dismissed, the order appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

LEDERBERG, J., did not participate.