DECISION
The Petitioner in this application for post-conviction relief has articulated a litany of grievances concerning the representation and performance of his trial counsel, whom he claims furnished Petitioner with "inaccurate, improper and ineffective advice." (Pet.'s Mem., 10.) Petitioner specifically asserts as grounds to support the latter claim the following: (1) "[Counsel's] failure to advise [him] of a plea offer, as well as the likely consequences of conviction at trial," and (2) "[Counsel's] failure to pursue discovery or conduct sufficient pretrial investigation." (Id. at 11-12.) He further urges this Court, should the Court conclude "that neither claim (standing alone) meets theStrickland test," to find that "the aggregate of [trial counsel's] actions represent a deficient and prejudicial performance by Defense Counsel, [which] thereby requires relief from this Court to remedy the constitutional violations which occurred in this case." (Id at 1.) (referencing Strickland v.Washington, 466 U.S. 688 (1984)).
The State straightforwardly counters, after a concise review and analysis of the evidence presented at trial and at the post-conviction hearing, that the "record in this matter does not come close to satisfying the two prong test of Strickland let alone the Dunn requirement of the attorney's representation [being] so lacking that the trial has become a farce and a mockery of justice." (State's Mem., 5) (referencing State v. Dunn,726 A.2d 1142 (R.I. 1999)). *Page 2 
 Standard of Review
In Strickland, the United State Supreme Court explained that the purpose of the requirement of effective assistance of counsel is to "ensure a fair trial." Id. at 686. The Court added that the requirement of effective assistance of counsel imposes ". . . the overarching duty to advocate the defendant's cause and the particular duty to consult with the defendant on important decisions. . . ." Id. at 688.
A "defendant [who] complains of the ineffective assistance of counsel . . . must show that counsel's representation fell below an objective standard of reasonableness." Id. To show that counsel failed to meet this objective standard of reasonableness, the Strickland Court established a two-pronged standard that requires the petitioner to show that trial counsel's performance was deficient and that the deficiency prejudiced the defendant. Id. at 687. As the Court stated,
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
However, in addition to this two-pronged test, "counsel is strongly presumed to have rendered adequate assistance."Id. at 690.
In order to satisfy the deficiency prong, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. As guides to determining reasonableness, the Strickland Court referred to the "prevailing norms of practice as reflected in American Bar Association standards. . . ." Id. at 688. *Page 3 
If Petitioner satisfies the deficiency prong, he must then address the prejudice requirement identified by the Strickland Court.Id. at 687. To satisfy the prejudice prong, "defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brown v.Moran, 535 A.2d 180, 182 (R.I. 1987) (quotingStrickland, 466 U.S. at 694). The Rhode Island Supreme Court recently affirmed this standard in Larngar v. Wall, stating that "prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would be different." 918 A.2d 850, 856 (R.I. 2007) (quotingState v. Figueroa, 639 A.2d 495, 500 (R.I. 1994)). The United States Supreme Court has addressed the prejudice standard in a post-conviction relief case pressing an ineffective assistance of counsel claim arising out of the plea process. Hill v.Lockhart, 474 U.S. 52, 57 (1985). In that case, the Court stated:
 "[t]he second, or `prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.
The Rhode Island Supreme Court explicitly adopted theStrickland standard in Heath v. Vose,747 A.2d 475, 478 (R.I. 2000). Recently, our Supreme Court stated that it "will reject an allegation of ineffective assistance of counsel `unless the attorney's representation was so lacking that the trial has become a farce and a mockery of justice.'"Moniz v. State, 933 A.2d 691, 696 (R.I. 2007) (quotingState v. Dunn, 726 A.2d 1142, 1146 n. 4 (R.I. 1999)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Heath, 747 A.2d at 478 (quotingStrickland, 466 U.S. at 686). *Page 4 
Also, the Heath Court stated that this determination must be made "based on the totality of the omissions [allegedly] committed" by petitioner's attorney. Heath, 747 A.2d at 478.
 Stipulated Facts (1) Petitioner Michael Bell was arraigned on one count of felony assault (pursuant to R.I.G.L. § 11-5-2) on October 18, 2007 in Newport County Superior Court case number N2-2007-220A.
(2) Petitioner was represented (from arraignment through trial) by Defense Attorney Kevin Dwyer ("Defense Counsel").
(3) The Special Assistant Attorney General first assigned to N2-2007-220A was Kevin Hagan.
(4) At some point prior to trial, Special Assistant Attorney General Kevin Hagan left the department. The case was then handled by Special Assistant Attorney General Kelly McElroy and Special Assistant Attorney General Ania Hopkins ("the prosecutors" or "the State").
(5) Prior to trial, the prosecutors did not have Defense Counsel's discovery motion in the State's file, nor were they aware if any discovery motions had been filed by the defense.
(6) On the morning of the first day of trial, the State was still not aware of any discovery motions being filed by the defense.
(7) On the morning of the first day of trial, the State made it known to Defense Counsel that it intended to call John Clinton Duffy (hereafter "Duffy") and Stephen Clair (hereafter "Clair") as witnesses at trial.
(8) Prior to trial, no statements from Duffy or Clair existed; thus, none were available to be turned over to the defense. *Page 5 
 (9) A bench trial commenced in Newport County Superior Court on this matter on March 23, 2009.
(10) On March 23, 2009, Defense Counsel raised the issue of a potential discovery violation regarding the late disclosure of the identity of State witnesses Duffy and Clair.
(11) On March 23, 2009, Associate Justice Melanie Thunberg ("Judge Thunberg") ordered the State to obtain written witness statements from Duffy, Clair, and Brendan Behan (hereafter "Behan") and to provide said statements to Defense Counsel.
(12) On March 23, 2009, Defense Counsel agreed to proceed with the State's first three (3) witnesses (complaining witness Ian Kerr, Dr. Glenn Hebel, and Detective April Amaral) because all material/statements regarding these witnesses had been provided to the defense well before the start of trial.
(13) After completion of the testimony of the first three (3) witnesses, the trial was continued approximately one month to enable the State to obtain the additional witness statements and provide them to Defense Counsel.
(14) The State presented its initial witnesses on March 23 and 24, 2009.
(15) The trial resumed on May 18, 2009.
(16) When the trial resumed on May 18, 2009, and Stephen Clair was under cross-examination by Defense Counsel, Mr. Clair stated that he and two (2) other teenagers were arrested on the night of the incident for vandalizing the trucks of Michael Bell and Joseph Hussey.
(17) Prior to Mr. Clair's testimony on May 18, 2009, the State was not aware of the aforementioned arrests (especially since the arrests were juvenile/family court matters); thus, the information was not provided to Defense Counsel prior to trial. *Page 6 
 (18) Upon learning of the aforementioned arrests, Defense Counsel moved for a mistrial on the basis of newly discovered evidence and exculpatory evidence.
(19) On May 18, 2009, the trial justice ordered the State to inquire with the Newport Police Department regarding Clair and his juvenile record (specifically, regarding the vandalism arrest/charge Clair alluded to during testimony).
(20) On May 22, 2009, the trial justice ruled that the aforementioned records of Clair were discoverable, and continued the trial until June 15, 2009.
(21) On June 15, 2009, the trial resumed, at which point the defense withdrew its motion for a mistrial.
(22) The trial continued over the period of June 15, 17, 24, and 25, 2009.
(23) The defense presented its case-in-chief on June 17, 24, and 25, 2009, during which time the defense asserted two affirmative defenses: self-defense and defense of others.
(24) During the defense's case-in-chief, the following witnesses testified for the defense: Michael Bell, Abigail Duren, Benjamin Kiracofe and Richard Walker.
(25) On July 1, 2009, Judge Thunberg found Petitioner guilty of felony assault.
(26) On July 22, 2009, Attorney Katherine Godin entered her appearance on behalf of Petitioner.
(27) On July 27, 2009, Defense Counsel formally withdrew his appearance.
(28) On September 10, 2009, Petitioner was sentenced to a fifteen (15) year sentence, with four (4) years to serve at the ACI, eleven (11) years suspended, eleven (11) years probation.
 Analysis
Petitioner insists that while he may have directed his attorney to proceed to trial, he *Page 7 
(Petitioner) did so based upon the "inaccurate, improper, and ineffective advice of Defense Counsel." (Pet.'s Mem., 10.) Thus, Petitioner's decision to go to trial and what he characterized as "Defense Counsel's affirmative steps to prevent plea negotiations from taking place" eventuated because trial counsel failed to furnish Petitioner with effective assistance. Due to these infirmities, Petitioner contends that his uninformed decision to maintain his innocence and proceed to trial warrant a vacation of his conviction.
At the post-conviction relief evidentiary hearing, Petitioner testified that trial counsel Dwyer never discussed with him the possibility of entering a nolo plea in lieu of going to trial. Bell maintained that he "would have taken a plea that did not involve jail" but Dwyer convinced him that he would "not be convicted" by the Court because he had a "clear cut case of self-defense and defense of others." Bell said that Dwyer did not explain the meaning of these legal theories to him but told him that since so many people were at the scene of the skirmish, the "bat was the equalizer."
On cross-examination, Bell stated that he would not have accepted "any offer because [he] wanted to go into the Army." In the pre-trial chambers conference, it was clear that a plea to a non-jail disposition would not be offered and that the Court would not accept one, in any event, because Benchmark 10 assigns a four to five year sentence to the offense of felony assault.
The remarks in the State's memorandum aptly, concisely and correctly characterize Dwyer's post-conviction testimony explaining that:
 "Mr. Dwyer articulated time and time again on both direct [,] as well as on cross-examination[,] that the ultimate decision [of] whether to go to trial is always up to the client. In the instant case, the decision rested with the [P]etitioner and only the [P]etitioner. Mr. Dwyer stated that from the numerous communications that Mr. Bell had with him[,] it was clearly dictated that Mr. Bell would not take a plea to a felony because it would hinder his plan of entering the military." (State's Summation Mem., 2). *Page 8 
The cases relied upon by Bell in urging this Court to declare that his choice to go to trial and forego a plea are completely distinguishable from Bell's factual scenario. In Napper, for example, trial counsel knew that the case was a "stone cold loser" yet merely made an "`offhanded' presentation" of the plea bargain offer to his client "for reasons entirely inappropriate to his client's interests[,]" viz., "his eagerness to try his first jury trial." Pennsylvania v. Napper, 385 A.2d 521, 523 (P.A. 1978).
In Turner, the Court held that the petitioner was denied effective assistance of counsel when his attorney advised him to reject a plea offer of two (2) years to serve and petitioner was sentenced, after trial by jury, to life imprisonment plus two (2) forty (40) year sentences. See Turner v.Tennessee, 858 F.2d 1201, 1207 (6th. Cir., 1988). Contrastingly, Attorney Dwyer made it clear from the inception of negotiations, or, more accurately, lack thereof, that Bell would not consider any plea that resulted in a jail sentence and foreclosed the possibility of entrance into the military. Although Dwyer held the sincere and reasonable belief, based upon the pre-trial information available to him, that Bell had a viable self/third party defense to interpose, he made it clear that it was ultimately the client's decision as to how to proceed. Dwyer's professional responsibility, which this Court opines he executed dutifully and competently, was to inform Bell of his options and the potential outcome of each. The fact that Dwyer thought, in the pre-trial landscape, that Bell was not likely to be convicted by this Court, in no way portends any ineptitude of counsel. Bell's conviction was based upon the evidence which this Court found credible, evidence which could only be produced in a trial setting in which Dwyer thoroughly, vigorously and conscientiously cross-examined the witnesses who observed Bell's behavior on the day in question.
Petitioner insists that had he: *Page 9 
 "been properly and accurately advised of the potential consequences of going to trial in this case, as well as his likelihood of succeeding on a claim of self-defense or defense of others, he would have likely taken a plea deal rather than proceed to trial. Defense Counsel's failure to adequately advise his client constitutes a deficient performance of trial counsel, and has certainly prejudiced the [P]etitioner by allowing him to proceed to trial on the premise that it would not result in prison time. Petitioner is now serving four [4] years at the ACI because of his trial counsel and inaccurate and misleading advice." (Pet.'s Mem., 12).
In reality, neither Bell's conviction nor his sentence were the product or result of any acts or omissions by Attorney Dwyer. Bell was convicted because this Court was convinced beyond a reasonable doubt that there was
 "no credible evidence, indeed no evidence at all, that the defendant or Abigail were in imminent threat of physical harm. The defendant was the sole individual in possession of a deadly weapon on the whole field and when he chose to retrieve it from his truck and return to the melee, rather than call the authorities, when he had a safe opportunity to do so, a call that would have immediately ensured his safety and the safety of the parties he was worried about." (Tr. 7/1/09, 6-7.)
The ensuing sentence resulted from this Court's conclusion that,
 "based upon the compelling evidence it heard and upon what the victim has suffered and continues to suffer [that] the defendant forcefully struck [the victim] in the most vulnerable part of a person's body, struck him with such force to cause these very serious injuries, a defenseless person, absolutely defenseless, the viciousness and forcefulness of the assault just cannot be justified in any logical way." (Tr. 7/1/09, 24-25.)
 "If [the victim] was a threat to Mr. Bell, Mr. Bell had plenty of options, even if he wanted to use the bat, which he was not justified in using in any way whatsoever, based on the evidence, he could have pushed [the victim] with it, he could have struck him in the arm, once again not justified, but he hit him in the head and [left a] permanent crater in the [victim's] head which [he] will have to live with, not to mention the emotional and psychological damage [the victim] will have to live with for the rest of his life." (Tr. 7/1/09, 24-25.)
There is absolutely no basis in fact or in evidence that raises the specter that Attorney Dwyer was negligent, as Petitioner claims, in his pursuit of pre-trial discovery or investigation. In actuality, Mr. Dwyer went far beyond the call of duty in seeking discovery and gathering *Page 10 
information from the police department concerning confidential juvenile material and incident reports. It is true that he withdrew his motions to pass and/or for a mistrial, but this occurred after an abundant time to investigate was furnished to him. Clearly it was a considered and thoughtful decision with which Petitioner concurred.
In any event, the testimony of Ian Kerr, standing alone, would suffice to support this Court's conclusion that Petitioner was guilty beyond a reasonable doubt. Even if no other witness — prosecution or defense — were presented, the Court, finding Ian Kerr completely believable, would have made the same pronouncement. Our Supreme Court has stated that "the law in Rhode Island is well-settled that [the Supreme Court] will pattern its evaluation of the ineffective assistance of counsel claims under the requirements of Strickland v. Washington. This "Strickland Test" as adopted in Barboza v. State,484 A.2d 881 (R.I. 1984) provides certain criteria that a complaining applicant must establish in order to show ineffective assistance of counsel." State v. Brennan,627 A.2d 842 (R.I. 1993). The first prong of the test requires that counsel's performance was deficient to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment. SeeBrennan, 627 A.2d at 845 (citing Strickland,466 U.S. at 687). Second, the applicant must show that such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to deprivation of the applicant's right to a fair trial. See id. (citingStrickland, 466 U.S. at 687).
This Court has been well familiar with Attorney Dwyer's advocacy for over twenty-five years. During every phase of these proceedings, this Court saw nothing less than what it has come to expect from this very earnest and experienced counsel: zealous representation, integrity, genuine skill and true dedication to his client's cause and comprehensive recognition, research and analysis of all pertinent legal concepts. At no time during Mr. Dwyer's representation of *Page 11 
Petitioner did any infirmities, irregularities, or negligence emerge either in Attorney Dwyer's obviously detailed knowledge of the legal and factual scenario of Petitioner's case, or in his capable, competent and intelligent advocacy.
 Conclusion
Because this Court finds no basis in fact or law for the assertions put forth in Petitioner's application, said application is denied, and the Court declines to vacate Petitioner's conviction.
 *Page 1